**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 01 2012, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STACY R. ULIANA**
Bargersville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICHARD DEAN MARTIN, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 10A05-1110-PC-526 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE CLARK SUPERIOR COURT
The Honorable Vicki L. Carmichael, Judge
Cause No. 10D01-1102-PC-44

June 1, 2012

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Richard Dean Martin was convicted of six counts of Class A felony child molesting in Clark Superior Court and sentenced to an aggregate term of fifty years incarceration. After his convictions were upheld on direct appeal, Martin filed a petition for post-conviction relief, which the post-conviction court denied. Martin appeals and presents two issues, which we restate as: (1) whether the post-conviction court clearly erred in concluding that Martin was not denied the effective assistance of trial counsel, and (2) whether the evidence was sufficient to support Martin's convictions.

We affirm.

## Facts and Procedural History

The facts underlying Martin's convictions were set forth in our memorandum decision on Martin's direct appeal:

> In 2004, Martin began living with C.C. and her three children, which included eight-year-old S.G. Over the next three years, Martin repeatedly molested S.G. Two or three times per month, Martin would enter S.G.'s bedroom late at night and kiss S.G.'s breasts or vagina and rub his penis on her face, neck, shoulders, and vagina. Each molestation lasted about ten to fifteen minutes.
>
> Martin and C.C. ended their relationship in November of 2006, and in February of 2007, S.G. told her mother about the molestations. C.C. informed the Clark County Sheriff's Department, which, in turn, informed the Indiana Department of Child Services ("DCS"). The DCS sent investigator Chris Yarbrough to interview C.C., S.G., and Martin. Yarbrough informed Martin of S.G.'s allegations, and Martin's response "was very firm that [S.G.] doesn't lie." While Martin did not admit the allegations to Yarbrough, Martin did acknowledge to Yarbrough that S.G. had "hunched" on Martin's penis one night when he was in bed with her, and that that "activity went on for approximately one minute and he noted . . . that he probably could have stopped that activity sooner than he did." Yarbrough made a report based on those interviews and submitted that report to the Clark County prosecutor.

The State charged Martin with six counts of Class A child molesting. The State alleged that Martin had molested S.G. in the fall of 2004, in the winter of 2004, in the winter of 2005, in March of 2006, in the summer of 2006, and in November of 2006. On August 14, 2008, Martin filed a motion to suppress "any and all statements made by the Defendant to Chris Yarbrough" on the grounds that those statements were "taken from him in violation of his state and federal constitutional and due process rights, including . . . Miranda warnings." The trial court denied Martin's request.

At the ensuing jury trial on August 19, the State introduced into evidence Yarbrough's and S.G.'s testimony, as well as the testimony of the arresting officer. Yarbrough testified that S.G. had detailed to him numerous molestations by Martin and that those molestations had occurred "three times per month over the entire period they lived together." Martin objected to that testimony on hearsay grounds, but the trial court overruled the objection. Yarbrough also testified as to Martin's comments during their interview, which Yarbrough stated he "consider[ed] to be a partial admission of guilt to the allegations." Martin objected "pursuant to the motion that we had filed," but, again, the trial court overruled Martin's objection. And S.G. likewise testified about the various times Martin had molested her. Martin objected to her testimony "on . . . 404(b)" grounds, which the trial court overruled.

At the close of trial, the court reviewed the final jury instructions with the parties and gave each side the express opportunity to object to any of the instructions. Martin did not object to any of the final instructions. The court then instructed the jury "that the defendant may be convicted of Child Molesting solely on the uncorroborated testimony of the victim [and that the State] is not required to present evidence to corroborate the testimony of the victim." The jurors were then sent to deliberate, but about ten minutes later the jury requested to hear S.G.'s testimony. S.G.'s testimony was about an hour and ten minutes in length. After hearing the testimony, the jury returned to deliberations. "Within minutes," the jury found Martin guilty as charged. The trial court entered its judgment of conviction accordingly.

Martin v. State, No. 10A01-0812-CR-568, slip op at 1-2 (Ind. Ct. App. Aug. 20, 2009)

(record citations omitted), trans. denied.

Following his September 24, 2008 sentencing hearing, Martin filed a motion to

correct error claiming that the jury had been improperly instructed that the

uncorroborated testimony of the victim was sufficient to support a conviction. The trial court denied this motion, and Martin appealed. On direct appeal, Martin claimed that the trial court committed fundamental errors by: (1) admitting evidence regarding uncharged acts of molestation against the victim, (2) admitting Yarbrough's testimony that Martin stated that the victim did not lie, and (3) instructing the jury that the uncorroborated testimony of a victim was sufficient to support a guilty verdict. Id., slip op. at 2. We concluded that the admission of the uncharged acts was harmless error, that Martin's statement was admissible as the statement of a party opponent, and that the jury instruction was not fundamental error because the victim's testimony was not wholly uncorroborated. Id., slip op. at 3-11.

On February 26, 2010, Martin filed a petition for post-conviction relief, and the post-conviction court held a hearing on this petition on April 11, 2011. The post-conviction court issued findings of fact and conclusions of law denying Martin's petition on September 7, 2011. Martin now appeals.

**Post-Conviction Standard of Review**

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. McCary v. State, 761 N.E.2d 389, 391 (Ind. 2002). Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. Davidson v. State, 763 N.E.2d 441, 443 (Ind. 2002). A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). On appeal from the denial

4

of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. at 643-44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. Graham v. State, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), aff'd of reh'g, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. Id. Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. Id.

### Ineffective Assistance of Trial Counsel

Martin contends that the post-conviction court clearly erred in denying his claim of ineffective assistance of trial counsel. Our supreme court summarized the law regarding claims of ineffective assistance of trial counsel in Timberlake v. State as follows:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness,

5

and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The Strickland Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the Strickland test are separate and independent inquiries. Thus, [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted).

### I. Failure to Obtain School Attendance Records

Martin first claims that his trial counsel was constitutionally ineffective because he failed to obtain school records in order to impeach S.G.'s testimony. S.G. testified at trial that in March 2006, her mother travelled to Oklahoma and her brother and sister were staying with their father in Louisville, Kentucky, leaving her home alone with Martin, who molested her on this occasion.

Martin's trial counsel testified at the post-conviction hearing that he did attempt to obtain the school attendance records, but school personnel informed him that such day-to-day attendance records were unavailable. Instead, the school personnel told him that the only attendance information available would be how many days a particular child had

6

missed. However, Martin's post-conviction counsel was able to obtain attendance records that indicate that S.G. and her sister were both in school on the days in question. Martin therefore argues that had his trial counsel obtained and used these records to impeach S.G.'s credibility, the jury would have known that S.G. was not telling the truth with regard to this incident.

The State acknowledges that effective representation requires adequate pre-trial investigation and preparation. See West v. State, 938 N.E.2d 305, 310 (Ind. Ct. App. 2010), trans. denied. But the State emphasizes that we should resist judging an attorney's performance with the benefit of hindsight. Timberlake, 753 N.E.2d at 605; Hernandez v. State, 638 N.E.2d 460, 461 (Ind. Ct. App. 1994), trans. denied. Therefore, "[w]hen deciding a claim of ineffective assistance of counsel for failure to investigate, we apply a great deal of deference to counsel's judgments." Boesch v. State, 778 N.E.2d 1276, 1283 (Ind. 2002).

Given our standard of review, we are unable to say that trial counsel's performance fell below an objective standard of reasonableness. He clearly attempted to obtain the school records at issue and was informed by school personnel at that time that such records were unavailable. Martin now argues that, had his trial counsel attempted to subpoena such records, then he would have discovered that the school personnel informed him incorrectly that such records were unavailable because Martin's post-conviction counsel was able to obtain such records. But that post-conviction counsel was able to obtain these records in 2010 does not necessarily mean that such records were available when Martin's trial counsel requested them. More importantly, even if they

7

were actually available, we cannot say that Martin's trial counsel's performance was deficient simply because he did not disbelieve what school personnel told him regarding the unavailability of such records.

Moreover, the attendance records were merely impeaching. In fact, with regard to the March 2006 molestation when S.G.'s mother was out of state, S.G. also testified that she could not remember whether her sister was in school or not at that time. The fact that S.G.'s sister might have been home at that time, as opposed to out of town with her father, does not make S.G.'s claim of molestation by Martin impossible. It simply means that S.G. might have been confused about the precise timing of this incident. We therefore cannot say that the post-conviction court erred in concluding that this evidence was not exculpatory or that Martin's trial counsel was constitutionally ineffective for failing to obtain the school attendance records.

## II. Failure to Object to Evidence

Martin also faults his trial counsel for failing to object to the introduction of certain evidence. In order to prove ineffective assistance of counsel due to the failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by the failure. Kubsch v. State, 934 N.E.2d 1138, 1150 (Ind. 2010). A defendant must further prove that the failure to object was unreasonable and resulted in sufficient prejudice such that there exists a reasonable probability the outcome would have been different. Potter v. State, 684 N.E.2d 1127, 1132 (Ind. 1997).

We further note that, although Martin's trial counsel testified at the post-conviction hearing, Martin did not present any testimony of his trial counsel with regard

8

to his failure to object to the evidence Martin now complains of. We therefore may infer that trial counsel would not have corroborated Martin's claims of ineffectiveness with regard to the failure to object. See Oberst v. State, 935 N.E.2d 1250, 1254 (Ind. Ct. App. 2010) (when trial counsel is not called as a witness to testify in support of a petitioner's arguments, the post-conviction court may infer that counsel would not have corroborated the petitioner's allegations), trans. denied.

Martin's claims for failure to object to the admission of evidence all involve the testimony of Yarbrough, the DCS investigator. Martin claims that his trial counsel should have objected to four portions of Yarbrough's testimony for various reasons. We address each of these claims in turn.

A. *Vouching Testimony*

Martin first faults his trial counsel for failing to object to that portion of Yarbrough's testimony which he characterizes as vouching for the credibility of S.G. Indiana Evidence Rule 704(b) provides, "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Such testimony invades the province of the jury in determining what weight it should place upon a witness's testimony. Rose v. State, 846 N.E.2d 363, 367 (Ind. Ct. App. 2006).

Twenty-eight years ago, in Lawrence v. State, 464 N.E.2d 923, 925 (Ind. 1984), our supreme court held that a child victim's capacity to describe sexual events justified "permitting some accrediting of the child witness in the form of opinions from parents, teachers, and others having adequate experience with the child, that the child is not prone

9

to exaggerate or fantasize about sexual matters." Such opinions were permissible to facilitate an original credibility assessment of the child by the trier of fact, so long as they do not take the direct form of 'I believe the child's story', or 'In my opinion the child is telling the truth.'" Id.

This position, however, made "Indiana . . . a part of the minority of jurisdictions in allowing some form of vouching of child witness testimony in child molestation cases." Hoglund v. State, 962 N.E.2d 1230, 1235 (Ind. 2012). Additionally, applying the Lawrence rule was not always simple, and this court noted that "the line between the impermissible vouching for the victim's credibility on the one hand and rendering permissible opinions with regard to a proclivity to not exaggerate or fantasize, on the other hand, is an extremely fine one." Hook v. State, 705 N.E.2d 219, 223 n.4 (Ind. Ct. App. 1999) (quoted in Hoglund, 962 N.E.2d at 1233).

In Hoglund, our supreme court observed that Lawrence was decided before the adoption of the Indiana Rules of Evidence, in particular Evidence Rule 704. Hoglund, 962 N.E.2d at 1234. Although some decisions of this court had viewed the Lawrence rule to be an exception or relaxation of Evidence Rule 704, the Hoglund court noted that "'long-standing rules of evidence have been subsumed or eliminated by the adoption of our new rules of evidence.'" Id. (quoting Joyner v. State, 678 N.E.2d 386, 389 n.2 (Ind. 1997)).

In Hoglund, the court revisited Lawrence in order to decide whether the rule from that case was consistent with Evidence Rule 704. Id. The court wrote:

Aligning ourselves with the majority of jurisdictions that have considered the matter we conclude that testimony concerning whether an alleged child victim is not prone to exaggerate or fantasize about sexual matters is an indirect but nonetheless functional equivalent of saying the child is telling the truth. It is this aspect of <u>Lawrence</u> that we today expressly overrule as being inconsistent with the mandate of Rule 704(b) which specifically prohibits witnesses from testifying as to whether another witness testified truthfully.

\* \* \*

To summarize, we expressly overrule that portion of <u>Lawrence</u> allowing for some accrediting of the child witness in the form of opinions from parents, teachers, and others having adequate experience with the child, that the child is not prone to exaggerate or fantasize about sexual matters. This indirect vouching testimony is little different than testimony that the child witness is telling the truth. As such it is at odds with Evidence Rule 704(b). Further, we decline to carve out an exception to the rule for sex abuse cases.

<u>Hoglund</u>, 962 N.E.2d at 1236-37 (citations and quotations omitted).

In the present case, the alleged vouching of S.G.'s testimony occurred when the State asked DCS investigator Yarbrough whether Martin had signed anything during his interview. Yarbrough responded:

Yes. I also, based on the fact that, that *I felt that [S.G.] had given a strong, credible statement*. Based on the fact of Mr. Martin's behaviors and what I considered to be a partial admission of guilt, I was concerned that he did, at that point that he did have a problem in the area of perpetrating against children. I requested that he sign a written Safety Plan whereby he would agree with me that he would have no contact with any, anybody under eighteen years old, any children, juveniles. And he did sign, sign that Safety Plan at that point.

Trial Tr. p. 54 (emphasis added). Martin claims that this reference to S.G.'s statement as "credible" and "strong" amounted to Yarbrough directly vouching for S.G.'s truthfulness and that his trial counsel was ineffective for failing to object to this testimony.

We agree with the State, however, that the performance of Martin's trial counsel did not fall below an objective standard of reasonableness when he failed to object to the

11

statement that Yarbrough felt that S.G. had given a "strong, credible" statement. Yarbrough's testimony was not in response to a question regarding the strength or credibility of S.G.'s statement. Instead, the question posed related to whether Martin signed anything during his interview. If trial counsel had objected to Yarbrough's testimony at this point, it might have emphasized his response to the jury. Under these facts and circumstances, trial counsel could have strategically chosen not to object in hopes that the jury might pass over this testimony.[1] We will not second-guess this choice with the benefit of hindsight. See State v. Moore, 678 N.E.2d 1258, 1261 (Ind. 1997) (noting that we do not second-guess strategic decisions requiring reasonable professional judgment even if the strategy or tactic, in hindsight, did not best serve the defendant's interests).

Moreover, it is not clear that, at the time of Martin's trial, an objection to Yarbrough's testimony would have been sustained. Yarbrough stated that S.G. had given a "strong, credible" statement. He did not directly vouch for the credibility of S.G.'s testimony. In fact, S.G. had not yet testified at the time Yarbrough was on the stand. Nor did Yarbrough directly state that he thought S.G.'s allegations were in fact true. At the time of Martin's trial, our supreme court had not yet abandoned the Lawrence rule permitting forms of "indirect" vouching. Not only does this provide further support for a strategic decision not to object to this portion of Yarbrough's testimony, it also calls into question whether such an objection, if made, would have been sustained. See Fisher v.

---

[1] Again, at the post-conviction hearing, Martin did not ask his trial counsel any questions regarding his failure to object, and we may presume that he would not have corroborated Martin's claims of ineffectiveness in this regard. See Oberst, 935 N.E.2d at 1254.

State, 810 N.E.2d 674, 679 (Ind. 2004) (appellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in existing law).

B. *Martin's Demeanor*

Martin also claims that his trial counsel should have objected to several portions of Yarbrough's testimony regarding his interview of Martin. Martin notes that Yarbrough described "various concerning behaviors" by Martin, such as nervousness and pacing. His trial counsel did, however, object to this testimony on grounds that Yarbrough could not give an opinion regarding Martin's guilt, which the trial court sustained. But Martin notes that Yarbrough's very next answer stated that he was concerned that Martin might be "deceptive." Trial Tr. p. 50. Yarbrough also testified that he interviewed Martin for three hours and suggested that interviews with individuals who have something to hide take several hours. Yarbrough further testified that "there was definitely something that [Martin] was hiding." Id. at 51. And, as noted above, when asked about the statement Martin signed at the interview, Yarbrough stated that, based on S.G.'s statement, Martin's behaviors, and what he considered to be a "partial admission of guilt," he was concerned that Martin "did have a problem in the area of perpetrating against children," and that Martin signed the agreement not to have any contact with children. Id. at 54. None of this testimony, however, appears to fall squarely within the ambit of Evidence Rule 704, which prohibits witnesses from testifying "to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

13

Yarbrough's testimony that he was concerned that Martin might be deceptive was just a concern, not an opinion prohibited by Evidence Rule 704(b). Similarly, Yarbrough's testimony that Martin appeared to be "hiding" something during the interview was not an opinion concerning guilt or innocence or whether anyone had testified truthfully. See State v. Velasquez, 944 N.E.2d 34, 44 (Ind. Ct. App. 2011) (concluding that testimony concerning demeanor does not amount to impermissible vouching).

Yarbrough's testimony concerning the length of his interview with Martin was similarly unobjectionable. Yarbrough testified that he interviewed Martin for a little over three hours. He also explained that, in his experience, "a lot of times it takes a long time for them to want to talk about whatever the situation is. So, it's not been uncommon over my fifteen years to interview people for several hours because they initially don't want to talk about it and after a while they decide that they do." Trial Tr. p. 50. This testimony contains no opinion regarding guilt, innocence, or whether a witness had testified truthfully. Nor is it an opinion concerning the truth or falsity of the allegations against Martin. Because this testimony was not prohibited by Evidence Rule 704, Martin's trial counsel cannot be faulted for failing to object to this testimony.

Yarbrough did testify that, based on what he considered to be a partial admission of guilt by Martin,[2] he was concerned that Martin had a problem "perpetrating against children" and that Martin signed an agreement not to have contact with children. Trial Tr.

---

[2] Martin separately claims that his trial counsel should have objected to the testimony concerning Martin's "partial admission," a claim we address below.

14

p. 54. This testimony comes close to being an opinion regarding Martin's guilt, i.e. because Yarbrough was concerned that Martin had a problem with perpetrating against children, he was more likely to be guilty of molesting S.G. Still, the fact remains that Yarbrough did not directly state that he thought Martin was guilty or that S.G.'s allegations were truthful, although the jury could have drawn such an inference from Yarbrough's testimony. But as we have observed before, Evidence Rule 704(b) "'does not prohibit presentation of evidence that leads to an inference, even if no witness could state [an] opinion with respect to that inference.'" Steinberg v. State, 941 N.E.2d 515, 525-26 (Ind. Ct. App. 2011), trans. denied (quoting 13 Robert L. Miller, Jr., Indiana Practice § 704.201 at 589 (3d ed. 2007)). Because it is not clear that any objection would have been sustained, we cannot fault Martin's trial counsel for not making an objection to this testimony.

Moreover, we find this case distinguishable from Bradford v. State, 960 N.E.2d 871 (Ind. Ct. App. 2012), which Martin cites in support of his argument. In that case, a child protective services investigator testified that she had "substantiated sexual abuse, meaning our office feels that there was enough evidence to conclude that sexual abuse occurred." Id. at 876. On appeal, we concluded that the investigator's testimony did not directly vouch for the truthfulness of the victim's testimony. Id. But we further concluded that the investigator's testimony did constitute an opinion regarding the truth of the allegations, because she testified that she had interviewed the victim and others and concluded that the victim had, in fact, been sexually abused. Id. at 876-77. We therefore concluded that this evidence was inadmissible. Id.

15

In contrast to the investigator in Bradford, here Yarbrough did not directly testify that Martin did or did not sexually molest S.G. He instead testified that he was concerned that Martin "had a problem in the area of perpetrating against children." Trial Tr. p. 54. Although this might provide support for S.G.'s claims, it does not state that Martin did or did not molest S.G. or that he believed that Martin molested S.G. Again, Evidence Rule 704(b) does not prohibit presentation of evidence that leads to an inference. Steinberg, 941 N.E.2d at 525-26.

We further disagree with Martin that there was no strategic reason for Martin's trial counsel's failure to object to this testimony. We again note that Martin did not question his trial counsel regarding this issue at the post-conviction hearing, and we may therefore presume that trial counsel would not have corroborated Martin's claims of ineffectiveness.[3] See Oberst, 935 N.E.2d at 1254. Additionally, Martin's trial counsel attacked Yarbrough's testimony on cross-examination with questions trying to demonstrate that Yarbrough did not keep an open mind when interviewing Martin. Indeed, trial counsel even asked Yarbrough directly if he believed S.G. Trial counsel was also able to get Yarbrough to admit that only 39% of molesting accusations are substantiated by DCS, establishing to the jury that false allegations are not uncommon.

We again emphasize that we will not judge counsel's performance with the benefit of hindsight and that counsel's strategic choices will not be deemed to be constitutionally ineffective simply because they were unsuccessful. See Moore, 678 N.E.2d at 1261.

---

[3] In his reply brief, Martin accuses the State of speculating with regard to whether Martin's trial counsel's choice was strategic. But it was Martin's burden at the post-conviction hearing to show that this was not a strategic decision, and Martin failed to question his trial counsel in this regard.

16

Under these facts and circumstances, the post-conviction court could have reasonably concluded that the performance of Martin's trial counsel did not fall below an objective standard of reasonableness for failing to object to Yarbrough's testimony.

With regard to the second prong of the <u>Strickland</u> analysis, the post-conviction court properly concluded that Martin failed to prove that, but for counsel's alleged errors, the outcome of his trial would have been different. Yarbrough certainly may have implied that he believed S.G.'s allegations against Yarbrough, but Martin's trial counsel vigorously cross-examined Yarbrough, revealing that many accusations of child molesting are not substantiated. And S.G. testified clearly that Martin repeatedly molested her. And as the post-conviction court noted, Martin's trial counsel put on a vigorous defense and did not simply sit mute during trial. Trial counsel made numerous objections, moved for a directed verdict, and presented the testimony of six witnesses. Martin's witnesses undermined S.G.'s credibility and established a motive for S.G. to lie in order to help her mother against Martin, who had reported S.G.'s mother for allegedly embezzling funds from her employer. After the jury's verdicts, trial counsel filed a motion to correct error. Under these facts and circumstances, we are unable to say that the post-conviction court clearly erred in concluding that Martin failed to meet his burden of establishing that his trial counsel was constitutionally ineffective for failing to object to Yarbrough's testimony on grounds that it violated Evidence Rule 704(b).

### C. *Hearsay Testimony*

Martin next claims that his trial counsel was ineffective for failing to object to hearsay statements by both S.G. and her mother which were admitted during Yarbrough's

17

testimony. The State notes that Martin's trial counsel did object when Yarbrough first started relating S.G.'s out-of-court statements, but this objection was overruled. Therefore, Martin's trial counsel did make a hearsay objection, at least to some of Yarbrough's testimony. But even if trial counsel should have separately objected to the other hearsay statements, Martin failed to demonstrate any resulting prejudice. Martin fails to show Yarbrough's testimony regarding S.G.'s statements were anything more than simply cumulative of S.G.'s testimony. See Purvis v. State, 829 N.E.2d 572, 585 (Ind. Ct. App. 2005) (erroneous admission of evidence is harmless if it is cumulative of other evidence), trans. denied.

Moreover, this case is readily distinguishable from Morris v. State, 628 N.E.2d 1256 (Ind. Ct. App. 1994), which Martin cites in support of his position that his trial counsel was ineffective for failing to object to Yarbrough's testimony recounting what S.G. had told him. In Morris, the child victim did not testify at all, thus depriving the defendant of the ability to cross-examine the victim. See id. at 1260 (noting that defendant was convicted solely on the basis of victim's out-of-court statements). This is certainly not the case here, where S.G. testified and was subject to a vigorous cross-examination by Martin's trial counsel.[4]

Martin also complains that his trial counsel should have objected to Yarbrough's testimony regarding what S.G.'s mother told him. But this testimony referred only to S.G.'s mother's statement corroborating S.G.'s out-of-court statement that S.G. never

---

[4] Martin's reference to Taylor v. State, 903 N.E.2d 463 (Ind. 2009) is similarly unavailing, as that case dealt with the admission of the victim's out-of-court statement under the protected persons statute when the victim was also available and did testify at trial.

18

slept in the bed with her mother and Martin. Even if Martin's trial counsel should have objected to this small portion of hearsay, we cannot say that the outcome of the trial would have been different had he done so. Without any resulting prejudice, Martin has not demonstrated that the post-conviction court clearly erred in this regard.

D. *Martin's "Partial Admission"*

The last portion of Yarbrough's testimony that Martin now claims his trial counsel should have objected to concerns Martin's statement to Yarbrough wherein he claimed that S.G. had "hunched" Martin's penis one night while she was in bed with him.

Martin acknowledges that we addressed this issue in his direct appeal, albeit under the guise of a claim of fundamental error. Martin notes, however, that this does not necessarily bar a claim of ineffective assistance of trial counsel based upon this particular issue. This court recently noted that

> there could be an unpreserved error raised on direct appeal that was found not to have caused fundamental error, but nevertheless when later raised in a post-conviction proceeding as part of an ineffective assistance claim the cumulative effect of that error when combined with other errors may amount to ineffective assistance.

Benefield v. State, 945 N.E.2d 791, 803 (Ind. Ct. App. 2011). But as we acknowledged in Benefield, our supreme court has explained:

> While we frame the standard for ineffective assistance of counsel and fundamental error in somewhat different terms—appropriately so, since the first is a standard of Federal Constitutional law and the second of state criminal procedure—they will invariably operate to produce the same result where the procedural posture of the claim is caused by counsel's failure to object at trial.

19

McCorker v. State, 797 N.E.2d 257, 262-63 (Ind. 2003); accord Benefield, 945 N.E.2d at

803. Thus, while these two standards are different, they "may frequently lead to the same

result." Benefield, 945 N.E.2d at 803.

Here, the two different analyses lead to the same result. As we explained in

Martin's direct appeal:

> [T]he references made by the witnesses to uncharged acts of criminal
> conduct by Martin were, at most, harmless to Martin. Indeed, there were
> only three possible references to uncharged conduct. First was the
> testimony of Yarbrough and S.G. in which they each stated that Martin had
> molested S.G. two or three times per month since 2004, which, when
> compared with the charging information, leads to the inference that the
> State did not charge Martin with every possible act of molestation. Second
> was Yarbrough's testimony that half of the molestations occurred in other
> jurisdictions, which, again, implies that Martin was not charged by the
> Clark County prosecutor with each act of molestation. *And third was
> Yarbrough's testimony of Martin's "admission" during their interview.*
> But neither of the first two references was expanded upon by the witnesses
> or the State. *And the third reference, Martin's "admission" to Yarbrough,
> is fairly innocuous when compared to S.G.'s testimony as to what Martin
> did to her.* Thus, we must conclude that the admission of the testimony
> regarding uncharged conduct had a minimal impact on the jury, did not
> deny Martin fundamental due process, and, therefore, was not fundamental
> error.

Martin v. State, No. 10A01-0812-CR-568, slip op at 7 (Ind. Ct. App. Aug. 20, 2009),

trans. denied.

Whether framed as a question of fundamental error or as one of prejudice in the

context of a claim of ineffective assistance of trial counsel, the result is the same. The

reference to Martin's admission was, at most, harmless and "fairly innocuous" when

compared to S.G.'s testimony. Therefore, even if Martin's counsel should have objected

20

to this testimony, we cannot say that the result of Martin's trial would have been any different had he done so.[5]

### IV. Failure to Object to Jury Instruction

Martin also claims that his trial counsel was ineffective for failing to object to an instruction which informed the jury that the uncorroborated testimony of the victim was sufficient to support a conviction for child molesting. In Ludy v. State, 784 N.E.2d 459, 460 (Ind. 2003), our supreme court disapproved of an instruction informing the jury, "A conviction may be based solely on the uncorroborated testimony of the alleged victim if such testimony establishes each element of any crime charged beyond a reasonable doubt." The Ludy court determined that such an instruction was "problematic" for three reasons: "First, it unfairly focuses the jury's attention on and highlights a single witness's testimony. Second, it presents a concept used in appellate review that is irrelevant to a jury's function as fact-finder. Third, by using the technical term 'uncorroborated,' the instruction may mislead or confuse the jury." Id. at 461.

Based upon Ludy, it is apparent that the trial court should not have instructed the jury in Martin's case that the uncorroborated testimony of the victim was sufficient to support a conviction for child molesting. Martin did challenge this instruction on direct

---

[5] Martin briefly argues that it was improper for Yarbrough to mention that he had prepared a report regarding S.G.'s allegations and that, as far as Yarbrough was aware, Martin had not filed any administrative challenges to this report. Tr. pp. 59-60. However, Yarbrough did not testify regarding the content of his report. Moreover, we disagree with Martin's suggestion that this denied him of his presumption of innocence. The jury was instructed that Martin was presumed innocent and that the State bore the burden of proving him guilty beyond a reasonable doubt. Accordingly, we cannot say that Martin's trial counsel was ineffective for failing to object to this portion of Yarbrough's testimony.

appeal under the guise of fundamental error. In our decision on Martin's direct appeal, we held:

> [T]he erroneous instruction does not amount to fundamental error. Although Martin asserts that S.G.'s testimony was the only evidence actually relied upon by the jury, there is no decisive evidence to support that suggestion. Further, as discussed above, the trial court did not err when it permitted the State to introduce Martin's statements to Yarbrough, which, in turn, provided at least some degree of corroboration of S.G.'s testimony. And our review of the totality of the jury instructions, as well as the record, demonstrates that the trial court instructed the jury on all elements of the charged offenses, the State's burden of proof, and the jury's role is assessing witness credibility. Thus, we must conclude that the giving of the now contested jury instruction was not fundamental error.

Martin, slip op. at 9-10

Again, although the question of fundamental error is not precisely the same as the question of Strickland prejudice, we reach a similar conclusion. S.G.'s testimony was not entirely uncorroborated, and the totality of the remaining jury instructions adequately instructed the jury regarding the elements of the charged offenses, the State's burden of proof, and the jury's role in assessing witness credibility. Under these facts and circumstances, the post-conviction court properly concluded that Martin was not denied the effective assistance of trial counsel based on his counsel's failure to object to this improper jury instruction.

## V. Sufficiency of the Evidence

Martin next claims that the evidence is insufficient to support his convictions on Counts I through III. Citing Koons v. State, 771 N.E.2d 685 (Ind. Ct. App. 2002), trans. denied, Martin contends that a claim of insufficient evidence can be raised for the first time in a petition for post-conviction relief. To be sure, the court in Koons stated that "a

conviction without sufficient evidence constitutes fundamental error, and fundamental error may be raised in a post-conviction proceeding, within the rules of post-conviction procedure." Id. at 688 (citing Green v. State, 525 N.E.2d 1260 (Ind. Ct. App. 1988)); accord Badelle v. State, 754 N.E.2d 510, 543 (Ind. Ct. App. 2001).

However, in contrast to the language from these cases suggesting otherwise, our supreme court in Sanders v. State, 765 N.E.2d 591, 592 (Ind. 2002), stated in no uncertain terms that "it [is] wrong to review [a] fundamental error claim in a post-conviction proceeding." Instead, the fundamental error rule applies only to direct appeals. Id. "In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." Id. (citing Canaan v. State, 683 N.E.2d 227, 235 n.6 (Ind. 1997)); see also State v. Hernandez, 910 N.E.2d 213, 216 (Ind. 2009) ("A petitioner for post-conviction relief cannot avoid the application of the waiver doctrine by arguing that it does not apply because the challenge raises fundamental error."); Conner v. State, 829 N.E.2d 21, 25 (Ind. 2005) (holding that where petitioner made no argument that his claim was not known or available to him in prior proceedings, his claim that he could present claim of fundamental error in successive post-conviction petition was "simply wrong."); Graham v. State, 941 N.E.2d 1091, 1097 (Ind. Ct. App. 2011), aff'd on reh'g, 947 N.E.2d 962 ("[f]reestanding claims of fundamental error are not available on post-conviction review."); Henderson v. State, 953 N.E.2d 639, 644 n.2 (Ind. Ct. App. 2011) (noting that, in Sanders, "our supreme court

23

plainly held that claims of fundamental error can only be raised on direct appeal, not in postconviction relief proceedings.").

Here, there is no indication that Martin's claim of insufficient evidence was somehow unknown or unavailable to him on direct appeal,[6] and he makes no argument regarding the ineffectiveness of his trial or appellate counsel in this regard. Because Martin did not present his claim of insufficient evidence on direct appeal, he cannot now present it as a freestanding claim of fundamental error in a post-conviction proceeding. The post-conviction court properly denied Martin's claim regarding insufficient evidence.

**Conclusion**

Martin has failed to meet his considerable appellate burden of showing that the post-conviction court erred in concluding that Martin was not denied the effective assistance of trial counsel. Certainly there were some things his trial counsel did that, with the benefit of hindsight, we might now say could have been done differently. But this is not the applicable standard. Even in those instances where Martin has shown that the performance of his trial counsel may have been deficient, he has not established any resulting prejudice. Lastly, his claim of insufficient evidence is not available in a petition for post-conviction relief.

Affirmed.

---

[6] We reject Martin's claim in his reply brief that this issue was demonstrably unavailable simply because the same counsel served as his appellate counsel and post-conviction counsel. Even if Martin's post-conviction counsel was unwilling or unable to couch a claim of insufficient evidence in terms of ineffective assistance of appellate counsel for purposes of his post-conviction petition, see Caruthers v. State, 926 N.E.2d 1016, 1023 (Ind. 2010) (arguing one's own ineffectiveness is not permissible under the Rules of Professional Conduct), this has no bearing on whether the issue was known and available to him at the time of his direct appeal. We fail to see how the issue of sufficiency of the evidence was unavailable to a defendant on direct appeal.

ROBB, C.J., and BAILEY, J., concur.