# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**CRAIG PERSINGER**
Marion, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Jan 27 2012, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

## IN THE
## COURT OF APPEALS OF INDIANA

BRADLEY BRADFORD, )
)
    Appellant-Defendant, )
)
        vs. )    No. 59A01-1104-CR-215
)
STATE OF INDIANA, )
)
    Appellee-Plaintiff. )

APPEAL FROM THE ORANGE CIRCUIT COURT
The Honorable Larry R. Blanton, Judge
Cause No. 59C01-0910-FC-89

**January 27, 2012**

**OPINION – FOR PUBLICATION**

**DARDEN, Judge**

STATEMENT OF THE CASE

Bradley Bradford appeals his conviction for child molesting as a class C felony.[1]

We reverse and remand.

ISSUE

Whether the trial court abused its discretion by admitting into evidence testimony from a Department of Child Services ("DCS") worker regarding the conclusion of her investigation into the allegation of sexual abuse.

FACTS[2]

In late July of 2009, Bradford and some of his family members traveled from Marion, Indiana to Orange County, Indiana so they could go to Holiday World. Bradford—along with his then-wife, Terry Bradford; their child, S.B.; their nieces, seven-year-old A.T. and eight-year-old S.T.; and A.T. and S.T.'s half-brother, eleven-year-old M.B.—stayed the night in a hotel in French Lick the evening before going to Holiday World. While at the hotel, the group went swimming and eventually returned to their single hotel room.

There was testimony from A.T. and M.B. that Bradford, who was lying on the bed in his underwear, told A.T. to get on the bed with him or he would not take her to Holiday World. She told him that she first needed to change out of her wet swimsuit, and she then changed into her pajamas. A.T. testified that when she got on the bed, Bradford began "kissin' all over [her,]" including on her belly and arms, (tr. 44), and that he also touched and rubbed her "private area" or "vagina" with his fingers and touched it on the

---

[1] Ind. Code § 35-42-4-3(b).

[2] We heard oral argument in the Indiana Court of Appeals Courtroom on December 13, 2011. We commend counsel on their oral advocacy.

outside of her pajamas. (Tr. 53). M.B., who was lying on the sofa, testified that Bradford "kissed [A.T.] like all over and then was like rubbing her[,]" (tr. 65), and that Bradford kissed A.T. "on like the neck and then it kinda went like down the back and then on the arms and legs[,]" (tr. 65-66), and "very close" to her vaginal area. (Tr. 66). On cross-examination, when asked if he saw Bradford "touch [A.T.] in the private area[,]" M.B. responded, "Yes." (Tr. 69).

Bradford's wife, Terry, who was lying on the bed immediately next to Bradford, testified that she never saw Bradford touch A.T. in an inappropriate sexual manner but that she did see Bradford giving A.T. "belly farts," which she explained was the action of blowing on her belly and made a "noise type thing." (Tr. 180). Bradford's videotaped statement to police, which was admitted into evidence and played for the jury, revealed that Bradford generally denied touching A.T. in an inappropriate manner or in the vaginal area. Bradford stated that before they went swimming, he picked up A.T., gave her a hug and kiss on the cheek, and blew on her stomach to make her laugh. He also stated that, on the second morning at the hotel after A.T. had slept on the floor the previous night, he had A.T. get into the bed, tucked her under the covers, and rubbed her shoulder and belly but he stated that he was already dressed and that he was not in the bed with her.

After the group returned home to Marion, M.B. told his grandmother and later his mother, Melissa Campbell, what he saw Bradford do to A.T. at the hotel. Campbell reported the allegations to the Marion Police Department, and the police reported the sexual abuse allegations to the Grant County DCS. Jessica Arrendale, the DCS case

3

assessor assigned to the case, interviewed A.T., Campbell, M.B., S.T., and S.B. as part of a DCS investigation.

On October 13, 2009, the State charged Bradford with child molesting as a class C felony. During Bradford's March 2011 jury trial, DCS worker Arrendale testified that at the conclusion of her investigation, she submitted to her DCS supervisor a "311" final report in which she concluded that the sexual abuse allegation was "substantiated." (Tr. 120). Bradford objected that Arrendale's testimony invaded the province of the jury, and the trial court overruled the objection. During the State's closing argument, the prosecutor referenced Arrendale's testimony and her conclusion that she had substantiated the sexual abuse allegation. The jury found Bradford guilty as charged, and the trial court sentenced Bradford to five years with two years suspended. Additional facts will be provided as necessary.

## DECISION

Bradford argues that the trial court abused its discretion by allowing Arrendale's testimony into evidence because it invaded the province of the jury and violated Indiana Evidence Rule 704(b). The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001).

Indiana Evidence Rule 704(b) provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of

4

allegations; whether a witness has testified truthfully; or legal conclusions." "Such testimony is an invasion of the province of the jurors in determining what weight they should place upon a witness's testimony." *Rose v. State*, 846 N.E.2d 363, 367 (Ind. Ct. App. 2006).

In the context of child molesting cases, however, the Indiana Supreme Court has recognized "that there is a special problem in assessing the credibility of children who are called upon as witnesses to describe sexual conduct." *Lawrence v. State,* 464 N.E.2d 923, 925 (Ind.1984), *abrogated on other grounds by Lannan v. State,* 600 N.E.2d 1334 (Ind. 1992). In *Lawrence,* our supreme court held:

> Whenever an alleged child victim takes the witness stand in such cases, the child's capacity to accurately describe a meeting with an adult which may involve touching, sexual stimulation, displays of affection and the like, is automatically in issue, whether or not there is an effort by the opponent of such witness to impeach on the basis of a lack of such capacity. The presence of that issue justifies the court in permitting some accrediting of the child witness in the form of opinions from parents, teachers, and others having adequate experience with the child, that the child is not prone to exaggerate or fantasize about sexual matters. Such opinions will facilitate an original credibility assessment of the child by the trier of fact, so long as they do not take the direct form of "I believe the child's story", or "In my opinion the child is telling the truth."

*Lawrence*, 464 N.E.2d at 925.[3]

During Bradford's jury trial, DCS worker Arrendale testified regarding the process and interview methods she used in her investigation and then the following exchange occurred between the prosecutor and Arrendale:

---

[3] We note that two recent cases that discussed the child molest exception allowing testimony regarding whether a child is prone to exaggerate or fantasize have had transfer granted and are currently before our Indiana Supreme Court. *See Hoglund v. State*, 945 N.E.2d 166 (Ind. Ct. App. 2011), *trans. granted*; *State v. Velasquez*, 944 N.E.2d 34 (Ind. Ct. App. 2011), *trans. granted*.

Q    Alright, and then after your interview and you talked with [A.T.'s mother], did you do anything else in relation to your investigation of this allegation?

A    Uh, just concluded my 311 and submitted that to my supervisor.

Q    And what's a 311?

A    A 311 is our final report when we receive a new report, a 311 report is basically our conclusion as to whether we found, uh, or whether we believe abuse or neglect occurred.

Q    And what are your options as far as conclusions as far as abuse, alleged abuse?

[Defense counsel:]  I'm going to object in, in that . . . is the province of the jury to draw any conclusions as to whether any abuse occurred here.  That invades the . . . it's the ultimate issue and invades the province of the jury, Your Honor.

[Prosecutor:]  Judge, she can tell what her conclusion was as far as her report was and her duty and role as a case manager for the Department of Child Services.  That wouldn't invade the province of the jury.  She can tell what her investigation (inaudible).

[Defense counsel:]   Renew my objection.

THE COURT:  It was Ms. Arrendale's investigation.  She can, I think she's certainly allowed to give us her opinion and then, of course, that would be subject to cross.  I'm going to allow the question.

A    Uh, when we receive a new report, we have to determine whether to substantiate abuse, which means that we believe that abuse and neglect occurred, or we can unsubstantiate it, which means we don't feel that there's enough evidence to say that abuse or neglect occurred.  Regarding this report with [A.T.], I substantiated sexual abuse, meaning our office feels that there was enough evidence to conclude that sexual abuse occurred.

(Tr. 119-20).

6

Bradford asserts that Arrendale's testimony amounted to "a double violation of Evid. R. 704(b), because in addition to offering a personal and corporate opinion that the allegations at issue were true, she also vouched for the credibility of the State's key witness, A.T." Bradford's Br. at 6. We will review each alleged violation of Rule 704(b) in turn.

1. Truthfulness of Testimony

Bradford argues that Arrendale's testimony was improperly admitted because it was "a direct opinion on the credibility of [A.T.]." Reply Br. at 4. The State contends that Arrendale's testimony was not a direct assertion as to A.T.'s credibility because Arrendale did not testify that she believed A.T.'s testimony and made no comment regarding her testimony. Instead, the State contends that Arrendale's testimony was "[a]t most" an indirect comment on the credibility of A.T. because "[a]ll that Ms. Arrendale testified to was that following her investigation, . . . she determined that there was sufficient evidence to conclude that the allegations of sexual abuse were substantiated for purposes of further action by the [DCS]." State's Br. at 6.

"No witness, whether lay or expert, is competent to testify that another witness is or is not telling the truth." *Angleton v. State*, 686 N.E.2d 803, 812 (Ind. 1997), *reh'g denied*. Our supreme court, however, has made a distinction between direct and indirect vouching testimony, prohibiting the former but allowing the latter. As set forth above, in *Lawrence*, the supreme court explained that opinion testimony that can "facilitate an original credibility assessment of the child by the trier of fact" will be allowed "so long as they do not take the <u>direct</u> form of 'I believe the child's story', or 'In my opinion the

7

child is telling the truth.'" *Lawrence*, 464 N.E.2d at 925 (emphasis added). In that case, our supreme court reviewed the testimony of a clinical social worker who testified that an alleged victim of child molestation had "a strong ability to know what happen[ed] to her" and had "a great anxiety on (her) part to be very sure she was telling the truth very precisely." *Id.* Our supreme court held that the "the challenged testimony of the social worker in this case . . . did not take this <u>direct</u> form, and was thus properly permitted by the trial court to be heard by the jury." *Id.* (emphasis added).

In *Carter v. State*, which involved an autistic child molest victim, our supreme court considered the testimony from a psychologist specializing in autism who testified essentially that autistic children do not deliberately deceive others. 754 N.E.2d 877, 882 (Ind. 2001), *reh'g denied*, *cert. denied*, 537 U.S. 831 (2002). The supreme court recognized that "[a]though [the psychologist] did not at any point <u>directly</u> state an opinion that [the victim] was telling the truth, the jury could easily have drawn a logical inference: autistic children do not deliberately lie, [the victim] is autistic, therefore [the victim] is not lying." *Id.* (emphasis added). The supreme court concluded that

> . . . based on the entire context of the expert's testimony that she came close to, but did not cross the line into impermissible Rule 704(b) vouching. Although her statements that autistic children find it difficult to deliberately deceive others may have been persuasive, the jury still had to draw its own inference as to whether [the victim's] story was an accurate account.

*Id.* at 882-83.

Likewise, here, although Arrendale's testimony that she substantiated that abuse had occurred as part of her DCS investigation may have been persuasive, she did not <u>directly</u> vouch for the truthfulness of A.T.'s testimony. Indeed, Arrendale made no

8

specific comment on A.T.'s trial testimony. Thus, we conclude that Arrendale's testimony did not constitute improper vouching of whether A.T. had testified truthfully. *See, e.g.*, *Carter*, 754 N.E.2d 882; *see also Krumm v. State*, 793 N.E.2d 1170, 1178 (Ind. Ct. App. 2003) (holding that testimony from psychologist and forensic interviewer properly admitted where testimony, while persuasive, did not directly comment on credibility of child victim's testimony).

2. Truth of Allegations

We now turn to Bradford's argument that Arrendale's testimony violated the provision in Indiana Evidence Rule 704(b) that prohibits witnesses from providing opinion testimony regarding "the truth or falsity of allegations[.]"

Here, Arrendale's testimony initially focused on the process and interview methods she used as a DCS worker to investigate the allegations that A.T. had been sexually abused by Bradford. However, at the end of her testimony, over Bradford's objection, Arrendale testified, "I substantiated sexual abuse, meaning our office feels that there was enough evidence to conclude that sexual abuse occurred." (Tr. 120).

Bradford argues that Arrendale's testimony "asserted both an individual opinion, and the opinion of an agency [DCS] which would undoubtedly have a certain degree of prestige in the minds of most jurors . . . that the allegations in question were true." Bradford's Br. at 6. Bradford contends that her testimony "directly runs afoul of Evid. R.

704(b)'s prohibition against a witness testifying as to [her] opinion of the truth or falsity of the allegations." *Id.*[4]

We agree with Bradford that Arrendale's testimony constituted an opinion regarding the truth of the allegations, thereby violating Indiana Evidence Rule 704(b). Arrendale testified that she was assigned by DCS to investigate allegations that A.T. had been sexually abused by Bradford. Arrendale explained that she interviewed A.T. and others regarding the allegations and concluded that A.T. had been sexually abused. Even the prosecutor, during closing argument, referred to Arrendale's testimony that she had substantiated the sexual abuse allegations. Because Arrendale's testimony addressed the truthfulness of the allegations, it was improper and invaded the province of the jury in violation of Indiana Evidence Rule 704(b). *See e.g.*, *Jones v. State*, 581 N.E.2d 1256, 1258 (Ind. Ct. App. 1991) (holding that child protective services investigator's opinion testimony that child victim was sexually molested was an assertion as to her belief as to truth of victim's allegations and invaded province of jury); *see also Rose v. State*, 846 N.E.2d 363, 369 (Ind. Ct. App. 2006) (holding that doctor's repeated testimony that he believed and was convinced by child victim's allegations invaded province of the jury). Therefore, the trial court erred by admitting Arrendale's testimony into evidence.

3. Harmless Error

Because the trial court erred by admitting Arrendale's testimony, we must determine whether such error is harmless or whether it requires reversal. When a trial

---

[4] The State did not make a specific argument addressing whether Arrendale's testimony violated this provision of Indiana Evidence Rule 704(b) and instead concentrated its argument on whether the testimony constituted an improper vouching of the credibility of A.T.'s testimony.

court abuses its discretion in the admission of evidence, we will reverse only if the error is inconsistent with substantial justice or affects the substantial rights of a party. *See* Ind. Trial Rule 61; *Pitts v. State*, 904 N.E.2d 313, 318 (Ind. Ct. App. 2009), *trans. denied*. In viewing the effect on a defendant's substantial rights, we look to the probable impact on the factfinder. *Pitts*, 904 N.E.2d at 318. "The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Lafayette v. State*, 917 N.E.2d 660, 666 (Ind. 2009). "Reversal may be compelled if the record as a whole discloses that the erroneously admitted evidence was likely to have had a prejudicial impact on the fact-finder, thereby contributing to the judgment." *Ground v. State*, 702 N.E.2d 728, 732 (Ind. Ct. App. 1998). "To determine whether the erroneous admission of irrelevant and prejudicial evidence . . . is harmless, we judge whether the jury's verdict was substantially swayed. If the error had substantial influence, or if one is left in grave doubt, the conviction cannot stand." *Lafayette v. State*, 917 N.E.2d 660, 666-67 (Ind. 2009) (citation and internal quotation marks omitted).

Here, the trial court erroneously allowed Arrendale to testify that she "substantiated sexual abuse" and that she and the office of DCS believed that Bradford had sexually abused A.T. (Tr. 120). Thereafter, during the State's closing argument, the prosecutor made multiple references to Arrendale's testimony that she substantiated abuse and used her testimony as evidence that A.T. and M.B. were not lying about the child molestation allegation against Bradford. Specifically, the prosecutor stated that

11

Arrendale was "train[ed] to interview kids to try to get to the truth of what happened," (tr. 211), and that Arrendale, who had a "duty at law" or a "duty to investigate" for DCS, (tr. 212), interviewed A.T. and M.B. and concluded that "the abuse was substantiated." (Tr. 213). The prosecutor also stated that Arrendale "did the right thing" and argued that the jury should "do [its] duty . . . and find the defendant guilty as charged of child molesting." (Tr. 218). During the State's rebuttal argument, the prosecutor again emphasized Arrendale's testimony as corroborating evidence to support the truthfulness of A.T. and M.B.'s testimony regarding the allegations against Bradford, stating that Arrendale was "trained to find the truth about what happened" and that A.T.'s and M.B.'s allegations were "enough for Jessica Arrendale to do her duty from DCS to investigate and to substantiate the abuse." (Tr. 230).

After reviewing the record as a whole, we conclude that—despite A.T.'s testimony and M.B.'s corroborating testimony that provided evidence of guilt—the erroneously admitted testimony here likely had a prejudicial impact upon the jury. In light of the nature of Arrendale's testimony and the repeated references to Arrendale's testimony during the State's closing arguments, we are unable to conclude that there was no substantial likelihood that this erroneously admitted evidence contributed to the conviction or that the jury's verdict was not substantially swayed by this evidence. If an error of this nature had substantial influence, or if we are left in grave doubt, a defendant's conviction cannot stand. *Lafayette*, 917 N.E.2d at 666-67. Considering the State's case as a whole, we cannot say that the admission of testimony was harmless. We, therefore, reverse Bradford's conviction and remand for retrial.

12

Reversed and remanded.

FRIEDLANDER, J., and VAIDIK, J., concur.