## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 04 2018, 10:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
| --- | --- |
| Mark Small<br>Indianapolis, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana |
| | Ellen H. Meilaender<br>Caryn N. Szyper<br>Jesse R. Drum<br>Deputy Attorneys General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Todd A. Dillon,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | April 4, 2018<br><br>Court of Appeals Case No.<br>24A01-1707-CR-1470<br><br>Appeal from the Franklin Circuit Court<br><br>The Honorable J. Steven Cox, Judge<br><br>Trial Court Cause No.<br>24C01-1508-F2-966 |

**Baker, Judge.**

[1] Todd Dillon appeals his conviction for Level 2 Felony Dealing in Methamphetamine,[1] arguing that the trial court erred by admitting 1) evidence from a vehicle search and 2) a law enforcement officer's testimony regarding admissions the officer had heard Dillon make about dealing methamphetamine during a probation revocation hearing in a separate cause. Finding no error, we affirm.

## Facts[2]

[2] Sometime between midnight and 1:00 a.m. on August 22, 2015, Franklin County Sheriff's Deputies Ryan Geiser and Adam Henson were conducting a traffic stop when Dillon drove past them in a pickup truck. The deputies observed Dillon driving slowly with his hands "locked at the ten and two and staring straightforward." Tr. Vol. I p. 33. As soon as Dillon passed, Deputy Geiser noticed that Dillon's vehicle's rear license plate light was out. Deputy Geiser pursued Dillon and initiated a traffic stop for this equipment violation while Deputy Henson concluded the other traffic stop.

[3] Deputy Geiser pulled Dillon over, and Deputy Henson arrived soon thereafter. When Deputy Geiser approached Dillon's vehicle, Deputy Geiser explained that he stopped Dillon "due to the license plate being improper." *Id.* at 38.

---

[1] Ind. Code § 35-48-4-1.1

[2] We heard oral argument on March 16, 2018, at Paoli Jr. & Sr. High School. We thank the school's administration, faculty, and students for their hospitality. We also thank counsel for their informative and engaging oral advocacy and subsequent discussion with the students.

Dillon "acknowledge[d] it and that the license plate was pushed in to the bumper so it wouldn't be illuminating." *Id.* When Deputy Geiser asked Dillon for his driver's license and vehicle registration, Dillon gave him his license but could not find the current vehicle registration, so Deputy Geiser told him that he could use an expired registration. During the encounter, Deputy Geiser observed Dillon "to be shaking abnormally and [in] a very nervous state." *Id.* Based on his experience, Deputy Geiser suspected that Dillon was nervous due to illegal substances or weapons in the vehicle.

[4] Deputy Geiser asked Dillon to step out of the vehicle and inquired whether there was anything illegal in the vehicle. Dillon replied that there was not. The deputy asked Dillon whether he had any weapons on his person, and Dillon replied that he did not. The deputy then asked Dillon whether he could conduct a pat down search, and Dillon agreed. During the pat down, the deputy retrieved a pocket knife from Dillon's back pocket and set it on the hood of his police car. Dillon then took other items out of his pocket, including his wallet, and set them on the hood of the police car. Deputy Geiser noticed that the wallet had "a large amount of cash sticking out of the top" and "was bulging a little bit." *Id.* at 175. Dillon also had two cell phones. Meanwhile, Deputy Henson was conducting a dog sniff around the vehicle; the dog alerted twice. Deputy Geiser again asked Dillon whether anything illegal was in the car, and Dillon again stated that there was not.

[5] Deputy Henson told Dillon that the dog's alert on the car gave the deputies probable cause to search the vehicle, and Dillon said, "have at it." *Id.* at 176.

Deputy Geiser proceeded to search the passenger compartment of the vehicle. He found an opened cigarette package, inside of which was a clear plastic bag containing 13.8 grams of methamphetamine.

[6] Deputy Geiser advised Dillon of his *Miranda*[3] rights and asked him where he had gotten the methamphetamine. Dillon replied that the methamphetamine was not his, that the vehicle was not his, and that multiple people drove the vehicle. As Deputy Geiser continued to search the vehicle, Dillon told Deputy Henson that the methamphetamine belonged to him. Deputy Geiser asked him whether he was dealing in methamphetamine. Dillon replied that he was not dealing, that the drugs were for his personal use, and that he had bought the drugs earlier that day.

[7] On August 25, 2015, the State charged Dillon with Level 2 felony dealing in methamphetamine. On September 28, 2015, Dillon had a probation revocation hearing under a separate cause in Dearborn County. During this hearing, Dillon was asked whether he admitted or denied dealing in methamphetamine in Franklin County; Dillon admitted to it approximately five times.

[8] On January 8, 2016, Dillon filed a motion to suppress evidence alleging, among other things, that the traffic stop was invalid because the vehicle had a functioning license plate light and, therefore, he did not commit a traffic infraction. A hearing on Dillon's motion took place on January 20, 2016,

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

during which a video from Deputy Geiser's in-car camera was played. Deputy Geiser testified that, although the license plate appeared somewhat illuminated in the video, that was because the license plate was reflecting the headlights from Deputy Geiser's car. He also testified that he inspected the vehicle and determined that the light was inside the bumper and did not illuminate the license plate. At the end of the hearing, the trial court denied Dillon's motion to suppress. The trial court found that Dillon "was operating a vehicle that had a license plate light that was not properly mounted and displaying light across the plate the way it should" and that this stop was for that "equipment malfunction or violation." *Id.* at 123. The trial court concluded that the evidence was "not suppressible because the time in which we're talking for the detention or the stop is not unreasonable." *Id.* at 125.

[9] A jury trial took place on January 25-26, 2016. Dillon objected to the evidence relating to the vehicle search and the discovery of the contraband. The trial court overruled the objection, stating that its ruling on Dillon's motion to suppress "was that [the license plate] was not properly lit and that it was just inside the bumper. And that both Officers testified that it was out." *Id.* at 179.

[10] During Deputy Geiser's testimony at trial, the State asked the deputy whether he was present with Dillon any time after August 22, 2015. Deputy Geiser replied that he and Dillon were together on September 28, 2015. Dillon objected, arguing that it would be difficult to cross-examine the deputy about the testimony the State wanted to elicit regarding Dillon's probation revocation hearing in Dearborn County without admitting prejudicial information. The

trial court overruled the objection, reasoning that because Dillon had been read his rights and made his statements in a public hearing, Deputy Geiser's testimony would be admissible. Deputy Geiser then testified that on September 28, 2015, Dillon was asked whether he admitted or denied dealing in methamphetamine in Franklin County, that a Franklin County cause number was read aloud, and that Dillon admitted approximately five times to dealing in methamphetamine in Franklin County. Deputy Geiser also testified that no one threatened or coerced Dillon when he made those statements and that Dillon had an attorney with him at that time.

[11] The jury found Dillon guilty of Level 2 felony dealing in methamphetamine. On April 13, 2016, the trial court imposed a twenty-five-year sentence with five years suspended to probation. Dillon now appeals.

## Discussion and Decision

[12] Dillon presents two arguments: 1) that the trial court erred by admitting the evidence found during the traffic stop because the stop was illegal, and 2) that the trial court erred by allowing Deputy Geiser to testify about Dillon's admissions during his probation revocation hearing in Dearborn County.

## I. Admission of Evidence From Search

[13] Dillon first argues that, because he did not commit a traffic infraction, the traffic stop was illegal, and that as a result, the trial court erred by denying his motion to suppress and admitting the evidence found in the vehicle during the stop. Because this appeal follows a completed trial, the issue is properly viewed

as one of admission of evidence, rather than of the denial of a motion to suppress. *E.g.*, *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2012). The admission or exclusion of evidence is within the trial court's discretion, and we will reverse only if the trial court's decision clearly contravenes the logic and effect of the facts and circumstances before it or if the trial court has misinterpreted the law. *E.g.*, *Bradford v. State*, 960 N.E.2d 871, 873 (Ind. Ct. App. 2012). To the extent that the evidence admission question turns on the constitutionality of a search, however, the issue is reviewed de novo. *E.g.*, *Jacobs v. State*, 76 N.E.3d 846, 849 (Ind. 2017).

[14] Indiana Code section 9-19-6-4(e) requires that "[e]ither a tail lamp or a separate lamp must be placed and constructed so as to illuminate the rear registration plate with a white light and make the plate clearly legible from a distance of fifty (50) feet to the rear."

[15] First, when Deputy Geiser approached Dillon's vehicle and explained the reason for the stop, Dillon acknowledged that "the license plate was pushed in to the bumper so it wouldn't be illuminating." Tr. Vol. I p. 38. Dillon's own admission is sufficient to establish that the vehicle's lack of illumination of the rear license plate violated Indiana Code section 9-19-6-4(e) and that, consequently, the traffic stop was legal. *See Merritt v. State*, 829 N.E.2d 472, 476 (Ind. 2005) (noting that any method of license plate display not in compliance with the Indiana statutory requirements "may serve as a basis for reasonable suspicion for law enforcement officers to make a traffic stop to ascertain whether the display fully complies with all statutory requirements").

[16] Second, no uncontroverted evidence was elicited during the trial that refuted the video evidence of the stop. Our Supreme Court has held that "for video evidence, the same deference is given to the trial court as with other evidence, unless the video evidence at issue indisputably contradicts the trial court's findings. A video indisputably contradicts the trial court's findings when no reasonable person can view the video and come to a different conclusion." *Love v. State*, 73 N.E.3d 693, 700 (Ind. 2017). Although Dillon argues that his license plate was illuminated in the video evidence, Deputy Geiser testified that the license plate appeared illuminated in the video because it was reflecting the headlights from Deputy Geiser's car. Deputy Geiser further explained that "the license plates are built to reflect and with my headlights, my bright lights, and my light bar (inaudible) while it's activated. It shows a reflection." Tr. Vol. I p. 58. In other words, the video evidence does not indisputably contradict the trial court's finding that the license plate on Dillon's vehicle was improperly lit.

[17] Because Dillon committed a traffic infraction, the traffic stop was legal, and the trial court did not err by admitting the evidence found during the vehicle search.

## II. Admission of Testimony

[18] Dillon next argues that the trial court erred by allowing Deputy Geiser to testify about Dillon's admissions during his probation revocation hearing in Dearborn County.[4] The admission or exclusion of evidence is within the trial court's

---

[4] Dillon asserts that he was subject to fundamental error because the jury heard this testimony. It appears that he makes a fundamental error argument to get around what he considered a failure to object to Deputy

discretion, and we will reverse only if the trial court's decision clearly contravenes the logic and effect of the facts and circumstances before it or if the trial court has misinterpreted the law. *E.g.*, *Bradford v. State*, 960 N.E.2d 871, 873 (Ind. Ct. App. 2012). Indiana Evidence Rule 403 prohibits the admission of evidence whose "probative value is substantially outweighed" by the danger of "unfair prejudice."

[19]     Dillon contends that the probative value of Deputy Geiser's testimony was substantially outweighed by the danger of unfair prejudice. This testimony offered significant probative value and while we agree that it was prejudicial, it was not unfairly prejudicial. The jury was not informed of the context in which Dillon's statements were made. The State only elicited testimony that Deputy Geiser was present with Dillon on September 28, 2015; that on that day Dillon was asked whether he admitted or denied that he was dealing methamphetamine as alleged in Franklin County; that Dillon admitted to it approximately five times; that no one threatened or coerced Dillon when he made those statements; and that Dillon had an attorney with him at that time. The jury could have reasonably inferred that Dillon made these statements to law enforcement officers, rather than in a separate case about which the jury knew nothing. Dillon was not unfairly prejudiced by this testimony.

---

Geiser's testimony at trial. However, Dillon objected to the admission of this evidence before Deputy Geiser reached the substance of this portion of his testimony. Accordingly, the issue was preserved for appeal.

[20] Moreover, Dillon's statements at his probation revocation hearing fall into the category of admissions against interest, and are therefore admissible. *Minnick v. State*, 544 N.E.2d 471, 481 (Ind. 1989) (holding that "[w]hen a criminal defendant makes a statement against interest it is admissible"). Therefore, the trial court did not err by admitting Deputy Geiser's testimony regarding Dillon's admissions during his probation revocation hearing.

[21] The judgment of the trial court is affirmed.

Najam, J., and Brown, J., concur.