# FOR PUBLICATION



FILED
Jul 29 2014, 10:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STEVEN KNECHT**
Vonerheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RYAN E. BEAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 91A02-1310-CR-912 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WHITE SUPERIOR COURT
The Honorable Robert B. Mrzlack, Judge
Cause No. 91D01-1012-FA-157

**July 29, 2014**

**OPINION – FOR PUBLICATION**

**VAIDIK, Chief Judge**

## Case Summary

After this Court reversed Ryan E. Bean's Class A felony child-molesting conviction, Bean was retried and convicted a second time. He received a thirty-year sentence. On appeal, Bean argues that fundamental error occurred at his retrial. Bean's retrial, which turned on the uncorroborated testimony of the alleged child victim, was tainted by vouching testimony and troubling prosecutorial misconduct, making a fair trial impossible. We therefore reverse.

## Facts and Procedural History

In 2001, Bean's ex-wife, Stacey Bean, gave birth to their daughter, H.B. Stacey and Bean separated in 2008. In 2010, Stacey moved in with her new boyfriend, Zachary Roark.

In August 2010, Stacey and Zachary noticed H.B. masturbating in the presence of other family members. After talking to H.B., Stacey called authorities. Darrel Noonkester, a regional investigator with the Indiana Department of Child Services, interviewed H.B. H.B. was also examined at Riley Hospital for Children in Indianapolis.

Bean was interviewed by authorities, including White County Sheriff Patrick Shafer. After being advised of his *Miranda* rights, Bean unequivocally invoked his right to counsel. The police did not honor his request. Although Bean repeatedly denied molesting H.B., he later confessed after hours of questioning.

At his trial for molesting H.B., Bean filed a motion to suppress his confession to police, but his motion was denied.[1] Bean was ultimately convicted of Class A felony

---

[1] The State also charged Bean with molesting M.S., his niece. The charges were severed, and Bean was tried and convicted of one count of Class A felony child molesting for M.S. That conviction

2

child molesting. His conviction was reversed by this Court a year later, due to the violation of his *Miranda* rights. *Bean v. State*, 973 N.E.2d 35, 45 (Ind. Ct. App. 2012) ("Bean's confession was obtained in violation of *Miranda* protocol and should not have been admitted into evidence . . . ."), *trans denied*. Bean was retried in 2013.

Before the retrial began, defense counsel sought a motion in limine with respect to vouching testimony, seeking to prohibit "Noonkester, particularly, from [] saying things like 'I believe her,' or 'she's credible.'" Tr. p. 11. The trial court granted counsel's request. *Id.* at 13.

Stacey was the first witness to testify at Bean's retrial. When asked why she called authorities after speaking to H.B., Stacey replied that "we believed that . . . after we talked to [H.B.], that her father, Ryan Bean, had molested her." *Id.* at 46. Later, when asked if she believed that Bean "had done something" to H.B., Stacey said yes. *Id.* at 47. The State also called Dr. Roberta Hibbard, a pediatric doctor at Riley Hospital for Children, to testify about her physical examination of H.B. Dr. Hibbard explained that H.B.'s exam was normal, and neither proved nor disproved that H.B. had experienced sexual contact. *Id.* at 60-61.

H.B., eleven years old at the time of Bean's retrial, also testified. H.B. described being molested by her father when she was five or six years old, saying that he tried many times to put his penis in her vagina. *Id.* at 76-77, 81. H.B. also testified that she watched pornography with Bean and Bean made her put her mouth on his penis, which made her vomit. *Id.* at 79-80. Bean would also kiss H.B. and put his tongue in her

---

was reversed by this Court in *Bean v. State*, 973 N.E.2d 35, 45 (Ind. Ct. App. 2012), *trans denied*, due to violations of Bean's *Miranda* rights. In 2012, Bean pled guilty to Class C felony child molesting with respect to M.S. and received a six-year executed sentence.

mouth. *Id.* at 81-82. According to H.B., Bean did these things when her mother Stacey was not home, and Bean made H.B. promise not to tell anyone what happened. *Id.* at 78-80-83.

Noonkester, a regional DCS investigator, testified next. Noonkester spoke at length about the investigatory process, describing how he substantiates allegations of child molestation:

> After all of the pieces of the puzzle come together, then a conclusion is drawn. *I draw a conclusion [as] to my belief, did it happen, did it not happen, whatever the allegation may be.* After I've made that decision, it is reviewed by my supervisor or my director in Carroll County. That director either agrees or disagrees with my finding. Once the conclusion is set in stone, it is agreed upon by myself and the director, its reviewed in Carroll County by what is called a child[-]protection team. Once a child[-]protection team comes together, [] the case and the investigation is presented to that governing body. And a child[-]protection team is set up and legislated by statute or Indiana law, who needs to be present or who needs to be on this board. That team then will either agree or disagree with the findings, and if they agree, generally the next steps of safety are put into place, referral to a prosecutor. If they disagree, they may not suggest that certain other evidentiary steps take place, at which time we follow their direction.

*Id.* at 117 (emphasis added). Noonkester explained that after interviewing H.B., he "drew the conclusion to substantiate the allegation, and it was upheld by our director and agreed with by the child[-]protection team." *Id.* at 125. He also stated that H.B. was referred to Riley Hospital for Children and to another facility for counseling. *Id.*

Noonkester also described looking for signs that a child has been coached. The prosecutor asked Noonkester if he "observ[ed] any signs of inaccuracy or coaching" during his interview with H.B. *Id.* at 122. Defense counsel objected, citing Indiana

4

Evidence Rule 404(b).[2]  *Id.*  at 122-23. The trial court overruled the objection, and Noonkester said he did not.  *Id.* at 123.  The prosecutor then asked Noonkester if H.B. "was based in reality or fantasy," and Noonkester responded that she was "based in reality."  *Id.*  Noonkester also stated that he did not believe H.B. was fantasizing or exaggerating.  *Id.* at 124.

Sheriff Shafer—who interviewed Bean before his 2010 trial—was the final witness to testify.  Before he took the stand and outside the jury's presence, defense counsel sought a limiting instruction:

> The court's well aware that the interview [was] suppressed [by the] Court of Appeals.  I think it's improper for the State to bring up any mention of an interview.  That's the very object that caused this retrial [sic] that we're doing this case for the second time.  It would be our contention that the court should limit the testimony of any officer involved in this investigation and probably should be instructed not to talk about an interview taking place with [Bean].  We're going to get into something that cannot be brought up.  I understand that if I were to cross-examine the officer and talk about an interview, that I think that opens up the door to potentially letting that evidence in.  Likewise, the State should be precluded from mentioning an interview due to the fact that it's already been deemed illegal and suppressed by the Court of Appeals . . . .

---

[2] Indiana Evidence Rule 404(b) provides:

(b) Crimes, Wrongs, or Other Acts.

(1) *Prohibited Uses.*  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses; Notice in a Criminal Case.*  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

*Id.* at 104-05.  The prosecutor disagreed, arguing that Sheriff Shafer should be able to testify that he interviewed Bean because "the jury has a right to understand the process of an investigatory process."  *Id.* at 105.  The judge disagreed, probing further:

THE COURT:      How is that relevant?

PROSECUTOR:     The fact that he was interviewed?

THE COURT:      Uh-huh.

PROSECUTOR:     Why is it relevant that he was investigated to begin with?  That's why we're here.

THE COURT:      I appreciate that.  I think it's relevant to indicate that yes, the police were called, they did certain things, but if they did something that was illegal, how is that relevant to the jury?

PROSECUTOR:     But they didn't do anything that was illegal. To interview [Bean] was not illegal.

THE COURT:      He invoked his right against self-incrimination, and they chose to continue questioning him beyond that.

PROSECUTOR:     I'm not interested in that.

THE COURT:      I appreciate that.  Then are you interested in the fact that he initially denied everything?

PROSECUTOR:     I'm not interested in the contents of the interview at all.

THE COURT:      I know, but you're giving the impression that something was said either way, which penalizes a defendant for claiming his right—or invoking his right against self-incrimination.

PROSECUTOR:     And I appreciate that and I understand all that, but there is a process that police go through in child molestation cases.

THE COURT:      Sure.

6

PROSECUTOR:     And the interview process is one of them.  If I ask the officer, what steps do you take in substantiating an allegation of molestation, they will say, we do this, we do this, we attempt to interview the defendant.  Did you interview the defendant in this case? Yes, we did.  Was he then placed under arrest?  Yes, he was.  That's the process.

THE COURT:     And if the defendant had invoked his right to remain silent at the beginning of that interview, you would not be allowed to make that—you would not even be allowed to question the officers about that.

PROSECUTOR:     Why?

THE COURT:     Huh?

PROSECUTOR:     Why?

THE COURT:     Because Indiana Rule—Evidence Rule 501(c) provides, "Comment or inference not permitted, the claim of privilege whether in the present preceding or upon a prior occasion is not a proper subject or comment by judge or counsel.  No inference may be drawn therefrom.  Claiming privilege without knowledge of a jury, in jury cases, proceedings shall be conducted to the extent practicable so as to facilitate the making of claims of privilege without the knowledge of the jury."

PROSECUTOR:     No.  I have no intention of saying that he claimed –

THE COURT:     It's creating an inference, though, that one way or another [Bean's] being penalized because we're not telling the jury everything.  It's fundamentally unfair.

*Id.* at 105-08.

The trial court expressly prohibited any "reference that the investigation included attempting to interview the defendant, interviewing the defendant, or the results of any investigation occurring during the course of the investigation," saying it was "not

7

relevant and would be in violation of [Bean's] Fifth Amendment right to not incriminate himself." *Id.* at 110. Despite this, the prosecutor inquired about Sheriff Shafer's pretrial investigation methods:

PROSECUTOR:     So, what do you do?

SHERIFF:        Well, you have an interview that's done with the victim, and based on that information that's gathered during that interview, normally other individuals come into play. You go and interview those individuals, and eventually it leads you to a person of interest that's involved in it, and then you look them up and interview them.

PROSECUTOR:     Did there come a time while you were a detective of the White County Sheriff's Department that you became involved with allegations of molestation involving [Bean and] [H.B.]?

SHERIFF:        Yes.

                    *       *       *       *       *

PROSECUTOR:     And did you follow the investigatory process that you just described?

SHERIFF:        I did.

PROSECUTOR:     And was [Bean] eventually arrested?

SHERIFF:        Yes.

*Id.* at 130-31.

The final day of Bean's retrial was September 11, 2013. The prosecutor began his closing argument by noting the date: "Today is a day of mourning for our nation. I hope we all put that in our hearts. Child molestation, ugly subject, ugly thing. Disgusting. No one wants to think about it. But that's what we have to do, and you're going to have to

8

do [it]." *Id.* at 137. As he continued, he stated that "seventy percent of females have been abused. Most go unreported. This happened. Unfortunately." *Id.* at 140. Finally, in closing, the prosecutor told the jurors that "we know what happened" because "Sheriff Shafer, Darrel Noonkester, and the child[-]protective agency substantiated, and you know that Mom and [Mom's boyfriend] believe what [H.B.] told them back in 2010." *Id.* at 141.

The jury convicted Bean of Class A felony child molesting.[3] The court sentenced Bean to thirty years in the Department of Correction.

Bean now appeals.

## Discussion and Decision

On appeal, Bean contends that two witnesses were permitted to improperly vouch for H.B.'s credibility and the prosecutor committed misconduct. He argues that the cumulative effect of vouching testimony and prosecutorial misconduct amounts to fundamental error.

## I. Standard of Review

Bean acknowledges that he did not preserve his claims of error by raising proper objections at trial; thus, he must establish that fundamental error occurred.[4]

---

[3] At the beginning of Bean's retrial, the State added a new charge, Class B felony incest, and the jury convicted Bean of this as well. Due to double-jeopardy concerns, the trial court merged the Class B felony incest conviction into Bean's Class A felony child-molesting conviction. The abstract of judgment did not enter judgment on the incest count. Appellant's App. p. 144.

[4] Bean frames two issues as exempt from fundamental-error review. *See* Appellant's Br. p. 10-12. When the prosecutor asked Noonkester if he "observ[ed] any signs of inaccuracy or coaching" during his interview with H.B, Noonkester said he did not. Tr. p. 122. Defense counsel then objected based on Indiana Evidence Rule 404(b). *Id.* On appeal, Bean states that counsel "misspoke and intended to object under [Indiana Evidence Rule] 704(b)." Appellant's Br. p. 12. Later, when Noonkester was asked if he believed H.B. was fantasizing or exaggerating, counsel objected because the question "called for an

9

"Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014) (quotation and citations omitted).

## I. Vouching Testimony

Bean first argues that Stacey and DCS investigator Noonkester impermissibly vouched for H.B.'s credibility.

Vouching testimony is specifically prohibited under Indiana Evidence Rule 704(b), which states: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." This testimony is considered an "invasion of the province of the jurors in determining what weight they should place upon a witness's testimony." *Kindred v. State*, 973 N.E.2d 1245, 1257 (Ind. Ct. App. 2012) (citation omitted), *trans. denied.*

### *A. Stacey Bean*

During her testimony, when asked why she called authorities after speaking to H.B., Stacey replied that "we believed that . . . after we talked to [H.B.], that her father, Ryan Bean, had molested her." Later, when asked if she believed that Bean "had done something" to H.B., Stacey said yes. In making these statements, Stacey impermissibly vouched for H.B.'s credibility and invaded the province of the jury. *See Hoglund v.*

opinion." Tr. p. 124. A party may not object on one ground at trial and raise a different ground on appeal. *White v. State*, 772 N.E.2d 408, 411 (Ind. 2002) (citation omitted). Because Bean did not lodge specific 704(b) vouching objections at trial, his claims on that basis are waived for review unless he can establish fundamental error.

*State*, 962 N.E.2d 1230, 1238 (Ind. 2012) (a witness may not vouch for a child by stating "I believe the child's story," or "In my opinion the child is telling the truth[.]"), *reh'g denied*; *see also Guiterrez v. State*, 961 N.E.2d 1030, 1034 (Ind. Ct. App. 2012) (testimony of sexual-assault nurse that she believed alleged child victim was telling the truth regarding alleged assault was improper vouching testimony).

### B. Darrel Noonkester

Bean also challenges DCS investigator Noonkester's testimony. Bean argues that Noonkester's testimony about the investigation and his statements about H.B.'s credibility constituted improper vouching.

Noonkester testified at length regarding the investigatory process, and in doing so, he described how he substantiates allegations of child molestation:

> After all of the pieces of the puzzle come together, then a conclusion is drawn. *I draw a conclusion [as] to my belief, did it happen, did it not happen, whatever the allegation may be.* After I've made that decision, it is reviewed by my supervisor or my director in Carroll County. That director either agrees or disagrees with my finding. Once the conclusion is set in stone, it is agreed upon by myself and the director, its reviewed in Carroll County by what is called a child[-]protection team. Once a child[-]protection team comes together, [] the case and the investigation is presented to that governing body. And a child[-]protection team is set up and legislated by statute or Indiana law, who needs to be present or who needs to be on this board. That team then will either agree or disagree with the findings, and if they agree, generally the next steps of safety are put into place, referral to a prosecutor. If they disagree, they may not suggest that certain other evidentiary steps take place, at which time we follow their direction.

Tr. p. 117 (emphasis added). Noonkester explained that after interviewing H.B., he "drew the conclusion to substantiate the allegation, and it was upheld by our director and

11

agreed with by the child[-]protection team." He also stated that H.B. was referred to Riley Hospital for Children for an examination and to another facility for counseling.

This Court has held that testimony that a claim has been substantiated constitutes an opinion regarding the truth of the allegations, thereby violating Indiana Evidence Rule 704(b). *See Bradford v. State*, 960 N.E.2d 871, 876-77 (Ind. Ct. App. 2012). In *Bradford*, a DCS caseworker testified, over the defendant's objection, as follows:

> Uh, when we receive a new report, we have to determine whether to substantiate abuse, which means that we believe that abuse and neglect occurred, or we can unsubstantiate it, which means we don't feel that there's enough evidence to say that abuse or neglect occurred. Regarding this report with [the child victim], I substantiated sexual abuse, meaning our office feels that there was enough evidence to conclude that sexual abuse occurred.

*Id.* at 874. On appeal, we concluded that the caseworker's testimony improperly addressed the truthfulness of the allegations and invaded the province of the jury in violation of Indiana Evidence Rule 704(b). We reached the opposite conclusion in *Heinzman v. State*, 970 N.E.2d 214 (Ind. Ct. App. 2012), *trans. granted*, *vacated in part*, *and summarily aff'd in part*, where a witness gave quite different testimony about substantiation:

> Q:     Would it be a proper statement to say that when you substantiate a case you find a reason to believe the allegations may have some factual foundation?
>
> A:     Yes, that would be correct.
>
> Q:     So there's no way for you to tell or to say whether or not at that point in time that they are absolutely beyond doubt true, but they have a foundation upon which to proceed with further investigation?
>
> A:     That's correct.

12

Q: Okay. And if you had unsubstantiated it, then there would have been no basis for further investigation as far as your department was concerned; is that correct?

A: That's correct.

(formatting altered). We distinguished this testimony from that in *Bradford*, explaining that in *Bradford*, while the caseworker's testimony did not directly vouch for the truthfulness of the victim's testimony, it constituted an opinion regarding the truth of the allegations, because she testified that she had interviewed the victim and others and concluded that the victim had been sexually abused. But in *Heinzman*, the witness explained that "substantiated" simply meant that the allegations had a foundation upon which to proceed with further investigation, whereas an unsubstantiated report meant that there was no basis for further investigation. *Id.* at 222.

Noonkester's testimony more resembles that in *Bradford* than in *Heinzman*. Noonkester testified that after conducting his investigation, he "draw[s] a conclusion [as] to my belief, did it happen, did it not happen, whatever the allegation may be," and he later stated that his decision to substantiate the allegations against Bean was upheld by his supervisor and a child-protection team. Noonkester's explanation of substantiation was simple: "did it happen, did it not happen[.]" So when he testified that he substantiated the allegations against Bean, it sent a clear message to the jury—Noonkester believed H.B.'s allegations against Bean. In making these statements, Noonkester impermissibly vouched for H.B.'s credibility.

Finally, in response to a question of whether H.B. "was based in reality or fantasy," Noonkester responded that she was "based in reality." Noonkester also stated

13

that he did not believe H.B. was fantasizing or exaggerating. Testimony concerning exaggeration or fantasy is the equivalent of testimony about truthfulness. *See Hoglund*, 962 N.E.2d at 1236 ("[W]e conclude that testimony concerning whether an alleged child victim 'is not prone to exaggerate or fantasize about sexual matters' . . . is an indirect but nonetheless functional equivalent of saying the child is 'telling the truth.'"). By testifying that H.B. was based in reality, not fantasy, and that he did not believe that H.B. was fantasizing or exaggerating, Noonkester essentially testified that H.B. was telling the truth, and again impermissibly vouched for H.B.'s credibility.[5]

## II. Prosecutorial Misconduct

Bean also argues that the prosecutor committed misconduct by eliciting certain testimony from Sheriff Shafer and in certain statements made during closing argument. Having failed to preserve his prosecutorial-misconduct claims for appeal,[6] Bean must establish both the grounds for prosecutorial misconduct and the grounds for fundamental error to succeed on his claim. *See Ryan*, 9 N.E.3d at 667-68. When determining whether prosecutorial misconduct has occurred, we first determine whether misconduct has in fact occurred, and if so, "whether the misconduct, under all of the circumstances, placed the

---

[5] Bean also challenges Noonkester's testimony about coaching. In *Kindred*, we held that a witness may provide general testimony about the signs of coaching in a child victim and may also testify about whether any such signs were observed in the alleged victim. 973 N.E.2d at 1258. In this case, the prosecutor asked Noonkester if he "observ[ed] any signs of inaccuracy or coaching" when he interviewed H.B., and Noonkester said he did not. In giving this response, Noonkester did not directly comment upon H.B.'s credibility. Rather, the information he provided allowed the jury to assess H.B.'s credibility and did not take the direct form of "I believe the child's story," or "In my opinion the child is telling the truth." *See Hoglund*, 962 N.E.2d at 1238. This particular testimony did not constitute improper vouching.

[6] Generally, in order to properly preserve a claim of prosecutorial misconduct for appeal, a defendant must not only raise a contemporaneous objection, but he must also request an admonishment and, if the admonishment is not given or is insufficient to cure the error, then he must request a mistrial. *Lainhart v. State*, 916 N.E.2d 924, 931 (Ind. Ct. App. 2009). Bean did none of these things.

14

defendant in a position of grave peril to which he or she would not have been subjected otherwise." *Id.* (citations omitted).

Before Sheriff Shafer—who interviewed Bean before his first trial—took the stand, the trial court expressly prohibited any "*reference that the investigation included attempting to interview the defendant, interviewing the defendant*, or the results of any investigation occurring during the course of the investigation," saying it was "not relevant and would be in violation of [Bean's] Fifth Amendment right to not incriminate himself." Nonetheless, the State elicited testimony from Sheriff Shafer regarding Bean's pretrial interview by inquiring about his investigatory procedure:

PROSECUTOR:    So, what do you do?

SHERIFF:    Well, you have an interview that's done with the victim, and based on that information that's gathered during that interview, normally other individuals come into play. You go and interview those individuals, and eventually it leads you to a person of interest that's involved in it, and then you look them up and interview them.

PROSECUTOR:    Did there come a time while you were a detective of the White County Sheriff's Department that you became involved with allegations of molestation involving the Defendant [and] [H.B.]?

SHERIFF:    Yes.

\*    \*    \*    \*    \*

PROSECUTOR:    And did you follow the investigatory process that you just described?

SHERIFF:    I did.

PROSECUTOR:    And was [Bean] eventually arrested?

15

SHERIFF:          Yes.

Tr. p. 130-31. Bean argues that the prosecutor committed misconduct by eliciting this testimony. The State argues that this testimony—and other testimony from the sheriff—was relevant and proper as course-of-investigation evidence.

This Court, our Supreme Court, and federal courts have been skeptical of attempts by the State to introduce course-of-investigation evidence. *See Kindred*, 973 N.E.2d at 1253-54. While the need for this evidence is slight, the potential for misuse is great. *Id.* at 1253 (citing 2 McCormick on Evidence § 249 (4th ed. 1992)). "Statements offered to show background or the course of the investigation can easily violate a core constitutional right, are easily misused, and are usually no more than minimally relevant." *Id.* at 1255 (quotation omitted). Course-of-investigation evidence is generally irrelevant in that it does not make it more or less probable that the defendant committed the act alleged. *Id.*

The fact that Sheriff Shafer normally interviews persons of interest and interviewed Bean in this investigation does not make it more or less probable that Bean molested H.B. And notably, the development and quality of the sheriff's investigation were not in issue. But most importantly, Sheriff Shafer's testimony invited the jurors to speculate about what occurred during his interview with Bean—it implied either that he interviewed Bean and that Bean was silent or that Bean spoke during the interview but for some unknown reason, jurors were not permitted to hear what he said. Both implications were improper—a prosecutor may not make a statement that a jury may reasonably interpret as an invitation to draw an adverse inference from a defendant's

16

silence, *Huls v. State*, 971 N.E.2d 739, 744 (Ind. Ct. App. 2012) (citation omitted), *trans. denied*, and this Court had already held that Bean's Fifth Amendment rights were violated during his pretrial interview, making the substance of the interview inadmissible. The prosecutor committed misconduct in eliciting this testimony.

Bean also argues that the prosecutor committed misconduct in closing argument.[7] During closing argument, the prosecutor told jurors that "we know what happened" because "Sheriff Shafer, Darrel Noonkester, and the child[-]protective agency substantiated, and you know that Mom and [Mom's boyfriend] believe what [H.B.] told them back in 2010." The record shows—and the State admits on appeal—that Sheriff Shafer was never involved in any decision to substantiate the allegations against Bean, which made this statement inaccurate and misleading. And as we have already concluded, the referenced testimony from Noonkester and Stacey amounted to improper vouching. By reinforcing this vouching testimony in closing argument, the prosecutor essentially told the jury that other people believed H.B., so they should too. *See Gaby v. State*, 949 N.E.2d 870, 881 (Ind. Ct. App. 2011) (prosecutor improperly vouched for victim when telling the jury that the prosecutor and the police believed the victim,

---

[7] We reject two of Bean's claims of error in this context. During closing argument, the prosecutor reminded the jurors that it was September 11. This was not misconduct—the prosecutor did not suggest that Bean was a terrorist, nor did he make a connection or comparison between Bean's crimes and terrorism. *See Baer v. State*, 942 N.E.2d 80, 110 n.8 (Ind. 2011) (no misconduct where "the prosecutor did not directly compare Baer to the perpetrators of the September 11 terrorist attacks . . . ."), *reh'g denied*. The prosecutor also stated that seventy percent of women have been abused but fail to report that abuse. The prosecutor also suggested that failure to report occurred in this case. While not supported by any evidence—the State admits as much—when considered in the context of the argument as a whole, which we must do, we cannot say it placed Bean in a position of grave peril. The statement was part of the larger argument the prosecutor was trying to make about delays or omissions in reporting, and this theory was reinforced by various witnesses throughout Bean's trial.

therefore the jury should too). This was improper, particularly in light of the fact that H.B.'s credibility was the central issue in this case.

### III. Cumulative Error

Bean contends that the above instances of vouching testimony and prosecutorial misconduct, when viewed cumulatively, resulted in fundamental error. We agree.

We are mindful of our Supreme Court's recent caution that the fundamental-error doctrine is meant to correct only the most egregious trial errors. *See Ryan*, 9 N.E.3d at 668. But *Ryan* involved only one instance of prosecutorial misconduct, and the evidence against the defendant was overwhelming. Here, we have two instances of prosecutorial misconduct—one of which is particularly troubling—and significant vouching testimony. By eliciting testimony about Bean's pretrial interview, the prosecutor did not merely stumble into error; despite being warned, he defied the trial court's instructions. In addition, two key witnesses—the alleged victim's mother and the DCS investigator—vouched for the alleged victim's credibility and invaded the province of the jury. The prosecutor reinforced this vouching testimony in closing argument, telling the jurors that numerous other people believed the alleged victim and suggesting that they should as well. Notably, unlike *Ryan*, Bean's retrial hinged on the uncorroborated testimony of the alleged victim. For these reasons, Bean was denied a fair trial.[8]

---

[8] Bean may be retried. When determining whether retrial is permissible, we consider all of the evidence admitted at trial, including the erroneously admitted evidence. *Kindred*, 973 N.E.2d at 1259 (citation omitted). "If, viewed as a whole, that evidence would have been sufficient to sustain the judgment, retrial would not offend double jeopardy principles." *Id.* The uncorroborated testimony of a child victim is sufficient to support a conviction for child molesting. *Id.* Because H.B.'s testimony would be sufficient to justify a conviction, jeopardy has not attached.

18

Reversed.

NAJAM, J., and BROWN, J. concur.