

ATTORNEY FOR APPELLANT

William W. Gooden
Mt. Vernon, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Melvin C. Hamilton,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | September 9, 2015<br><br>Court of Appeals Cause No.<br>65A04-1412-CR-592<br><br>Appeal from the Posey Circuit<br>Court<br><br>The Honorable James M.<br>Redwine, Judge<br><br>Trial Court Cause No.<br>65C01-1403-FA-71 |

**Barnes, Judge.**

## Case Summary

[1] Melvin Hamilton appeals his convictions for three counts of Class A felony child molesting. We reverse and remand.

## Issue

The sole restated issue before us is whether the trial court properly allowed witnesses for the State to vouch for the credibility of the alleged victims.

## Facts

A.S. and D.P. are the foster children of Heather and Charles Reese. Hamilton is Charles's stepfather. Hamilton frequently babysat the children at his home in Posey County. In 2014, A.S. was ten, and D.P. was five. A.S. and D.P. called Hamilton "Pappy." Tr. p. 29.

On February 24, 2014, A.S. and D.P. spent the night at Hamilton's house. During the night, D.P. awoke to Hamilton putting his finger in her "private." *Id.* at 46. A.S. was in the same room at the time, and Hamilton also put his finger in her "private" while D.P. watched. *Id.* at 56. Hamilton had done similar things to A.S. on at least five prior occasions.

On the following morning, D.P. spontaneously told Heather that Pappy had touched her; when asked where, D.P. pointed to her vagina. Both D.P. and A.S. subsequently were interviewed by Molly Elfreich, a trained forensic interviewer, and D.P. and A.S. described the molestations to her. A medical doctor also examined D.P. and A.S., who recounted the molestations to the doctor.

[6] After the forensic interview and medical examination, Detective Jeremy Fortune of the Posey County Sheriff's Department interviewed Hamilton. During the interview, the following exchanged occurred:

> [Fortune]: [T]his is the thing, Chuck, for a five year old to say somebody stuck their finger in my vagina is pretty powerful.
>
> [Hamilton]: Very much so.
>
> [Fortune]: That's pretty powerful.
>
> [Hamiton]: Where, where is she coming up with that?
>
> [Fortune]: And, and to say "Pappy did it" . . .
>
> [Hamilton]: Exactly.
>
> [Fortune]: . . . that's even more powerful.
>
> [Hamilton]: I agree.

Ex. 7 p. 29.

[7] The State charged Hamilton with three counts of Class A felony child molesting and one count of Class C felony child molesting. At his jury trial, during cross-examination of D.P., counsel for Hamilton asked, "Has anyone told you what to say today?" Tr. p. 51. D.P. said no one had. Similarly, counsel for Hamilton asked A.S. during cross-examination, "Has anyone told you what

you should say here today?" *Id.* at 59. A.S. stated only that she had been told to tell the truth.

[8] The State also called Elfreich to testify after D.P. and A.S. testified. Without objection, the State asked Elfreich to describe various factors that she would look for as indicators that a child had been coached; namely, whether the child has trouble recalling details or has to start a story over when detailed questions are asked. Also without objection, the State asked Elfreich whether she had observed those factors when interviewing D.P. and A.S., and she testified that she had not. Then, over Hamilton's objection, the State asked Elfreich whether she had observed *any* indicators of coaching in either child, and she testified that she had not. Also, Hamilton objected to the jury hearing Detective Fortune say during his interview of Hamilton that D.P.'s statements describing her molestation had been "powerful." Ex. 7 p. 29. The trial court overruled this objection.

[9] The jury found Hamilton guilty of three counts of Class A felony child molestation and not guilty of the Class C felony child molestation charge. The trial court sentenced Hamilton accordingly, and he now appeals.

## Analysis

[10] Hamilton contends that the trial court erred in overruling his objections to purported vouching by Elfreich and Detective Fortune regarding the truthfulness of D.P.'s and A.S.'s testimony. "A trial court has broad discretion in ruling on the admissibility of evidence and we will disturb its rulings only

where it is shown that the court abused that discretion." *Hoglund v. State*, 962 N.E.2d 1230, 1237 (Ind. 2012). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it." *Id.*

[11] In *Hoglund*, our supreme court addressed existing case law regarding vouching testimony in the context of child sex abuse cases. Specifically, in *Lawrence v. State*, 464 N.E.2d 923, 925 (Ind. 1984), the court had held that trial courts were allowed to permit "some accrediting of the child witness in the form of opinions from parents, teachers, and others having adequate experience with the child, that the child is not prone to exaggerate or fantasize about sexual matters." The *Hoglund* court noted that *Lawrence* predated the adoption of the Indiana Evidence Rules. In particular, Indiana Evidence Rule 704(b), enacted in 1994, provides: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Cases decided by this court after adoption of the Evidence Rules construed *Lawrence* "as representing an exception to Rule 704(b) noting that the Rule is relaxed in the child molestation context." *Hoglund*, 962 N.E.2d at 1234 (citing, *e.g.*, *Rose v. State*, 846 N.E.2d 363, 367 (Ind. Ct. App. 2006)).

[12] The *Hoglund* court overruled *Lawrence*. Specifically, the court held allowing testimony that a child is not prone to exaggerate or fantasize about sexual matters is "indirect vouching testimony [that] is little different than testimony that the child witness is telling the truth." *Id.* at 1237. The court held that such

testimony is at odds with Evidence Rule 704(b) and that it was inappropriate to carve out an exception to the rule for sex abuse cases. *Id.*

[13] In *Kindred v. State*, 973 N.E.2d 1245 (Ind. Ct. App. 2012), *trans. denied*, this court addressed *Hoglund*'s holding in the context of testimony related to whether an alleged child sex abuse victim had been "coached." Ultimately, we stated:

> We hold that general testimony about the signs of coaching, as well as the presence or absence of those signs in the child victim at issue, preserves the ultimate credibility determination for the jury and therefore does not constitute vouching. By contrast, where a witness opines as to whether the child victim was coached—offering an ultimate opinion . . . the witness invades the province of the jury and vouches for the child.

*Kindred*, 973 N.E.2d at 1258. Another panel of this court followed *Kindred* in *Archer v. State*, 996 N.E.2d 341 (Ind. Ct. App. 2013), *trans. denied*.

[14] Very recently, in *Sampson v. State*, No. 87S01-1410-CR-684 (July 30, 2015), our supreme court overruled *Kindred* and *Archer*.[1] In *Sampson*, the State asked a forensic interviewer a number of questions related to coaching of alleged child sex abuse victims, including what the possible signs are of a child having been

---

[1] Although the *Sampson* opinion does not mention *Bean v. State*, 15 N.E.3d 12 (Ind. Ct. App. 2014), *trans. denied*, part of that case has been called into question by *Sampson*. Specifically, we stated in *Bean* that testimony from a forensic interviewer that he did not observe any signs of inaccuracy or coaching in the alleged molestation victim was not improper vouching. *Bean*, 15 N.E.3d at 20, n.5. After *Sampson*, this statement is inaccurate. We note that the trial court specifically relied upon this footnote in *Bean* in overruling Hamilton's objection to Elfreich's testimony.

coached and whether the interviewer had observed any such signs in the alleged victim in the case. The defendant failed to object to any of the questions and was convicted of Class C felony child molesting.

[15] After reviewing case law from Indiana and other jurisdictions, the court held:

> We conclude therefore that the subtle distinction between an expert's testimony that a child *has or has not been coached* versus an expert's testimony that the child *did or did not exhibit any "signs or indicators" of coaching* is insufficient to guard against the dangers that such testimony will constitute impermissible vouching as we expressed in *Hoglund*. Nevertheless, "once a child's credibility is called into question proper expert testimony may be appropriate." *Steward [v. State]*, 652 N.E.2d [490,] 499 [(Ind. 1995)]. "[B]ehavioral characteristics of child abuse victims, even where inadmissible to prove abuse, are far less controversial when offered to rebut a claim by the defense that a child complainant's behavior . . . is inconsistent with her claim of abuse." *Id.* at 496. We thus align ourselves with those jurisdictions that permit testimony about the signs of coaching and whether a child exhibited such signs or has or has not been coached, provided the defendant has opened the door to such testimony.

*Sampson*, slip op. at 9.[2]

[16] The *Sampson* opinion also contains the following observation as to what constitutes "opening the door" to otherwise inadmissible vouching evidence: "Opening the door refers to the principle that where one party introduces

---

[2] The time period for filing a petition for rehearing in *Sampson* has not yet passed.

evidence of a particular fact, the opposing party is entitled to introduce evidence in explanation or rebuttal thereof, even though the rebuttal evidence otherwise would have been inadmissible." *Id.* at p. 9 n.4. "'The door may be opened when the trier of fact has been left with a false or misleading impression of the facts.'" *Id.* (quoting *Clark v. State*, 915 N.E.2d 126, 130 (Ind. 2009)). Although this court has generally stated that, "when a defendant interjects an issue in a trial, he opens the door to otherwise inadmissible evidence," we also have emphasized, "evidence relied upon to open the door must leave the trier of fact with a false or misleading impression of the facts related." *Beauchamp v. State*, 788 N.E.2d 881, 896 (Ind. Ct. App. 2003).

[17] In *Steward*, relied upon by the *Sampson* opinion, the court held that expert testimony regarding "child sexual abuse syndrome" is inadmissible unless a defendant has first called a child's credibility into question. *Steward*, 652 N.E.2d at 499. Specifically, the court noted that "if the defense discusses or presents evidence of" behavior that is seemingly inconsistent with having been abused, "or if during trial testimony the child recants a prior allegation of abuse," then expert testimony regarding "child sexual abuse syndrome" may be admissible. *Id.*

[18] Ultimately, the *Sampson* court held that, although any testimony opining whether a child has been coached is inadmissible, such testimony did not constitute fundamental error in the case before it. *Sampson*, slip op. at 10. Specifically, the court noted that defense counsel had thoroughly cross-examined the alleged victim, whose testimony never wavered from that given

during direct examination. *Id.* The defendant's testimony also coincided with the alleged victim's in many ways, except for the having denied molesting the victim. *Id.* And, the defendant had thoroughly cross-examined the forensic interviewer regarding the basis on which she had reached her conclusion that the alleged victim had not been coached. *Id.*

[19] Here, Hamilton did not object to testimony by Elfreich regarding whether either D.P. or A.S. had trouble recalling details or had to start their narrative over when being asked detailed questions, which according to Elfreich would have been indicators of coaching. However, Hamilton did object to Elfreich being asked, "did you observe any indicators of coaching" in either D.P. or A.S., to which she responded "No, I did not." Tr. p. 81. Hamilton's failure to object to the first questions but objecting to the last question was consistent with this court's holdings in *Kindred* and *Archer*. Also, Hamilton's objection to Elfreich's ultimate opinion on coaching preserved the issue for review, unlike in *Sampson*. It is clear under *Sampson* that all of Elfreich's testimony regarding indicators of coaching was inadmissible. It is the type of vouching testimony deemed to improperly invade the province of the jury to assess witness credibility. *See Head v. State*, 519 N.E.2d 151, 153 (Ind. 1988) (reversing molestation convictions for improper vouching evidence described as "an invasion of the province of the jury in determining what weight they would place upon the child's testimony.").

[20] In overruling Hamilton's objection, the trial court ruled in part that Hamilton had "opened the door" to Elfreich's coaching testimony because he had asked

both D.P. and A.S. during cross-examination whether anyone had told them what to say in court. However, both D.P. and A.S. denied having been told what to say by anyone. On appeal, the State does not argue that Hamilton opened the door to Elfreich's testimony, and it is correct not to do so. Merely asking the witnesses whether they had been told what to say is not equivalent to presenting evidence that they had been told what to say, or creating a false impression in the jury that they had been. The witnesses unequivocally answered no to the questions—there was no evidence or suggestion in any testimony that the girls had been coached. As such, Hamilton did not open the door to Elfreich's testimony.

[21] Unlike in *Sampson*, Hamilton preserved his claim of error with respect to Elfreich's testimony, and so we review it for ordinary reversible error, not fundamental error. We will reverse a conviction for preserved error in the admission of evidence if the error is inconsistent with substantial justice or affects the substantial rights of a party. *Bradford v. State*, 960 N.E.2d 871, 877 (Ind. Ct. App. 2012) (citing Ind. Trial Rule 61). In analyzing the prejudicial effect on a defendant's substantial rights from the erroneous admission of evidence, we look to the probable impact of the evidence on the factfinder. *Id.* The improper admission of evidence is deemed harmless if there is substantial independent evidence of guilt supporting a conviction such that we can say there is no substantial likelihood that the questioned evidence contributed to the conviction. *Id.* (quoting *Lafayette v. State*, 917 N.E.2d 660, 666 (Ind. 2009)). "'Reversal may be compelled if the record as a whole discloses that the

erroneously admitted evidence was likely to have had a prejudicial impact on the fact-finder, thereby contributing to the judgment.'" *Id.* (quoting *Ground v. State*, 702 N.E.2d 728, 732 (Ind. Ct. App. 1998)). If we determine that an evidentiary error had substantial influence on a verdict, or if we are left in grave doubt as to whether it did so, we must reverse the conviction. *Id.*

[22] We cannot say that the erroneous admission of Elfreich's vouching testimony was harmless. There was no corroborating evidence of Hamilton's guilt apart from the testimony of D.P. and A.S. The only value of Elfreich's testimony was to improperly bolster the credibility of D.P. and A.S. If there is to be a rule barring vouching testimony such as Elfreich's, then it is extremely difficult to imagine a scenario in which such testimony, where an objection to it was raised at trial, is harmless in a case such as this where a conviction depends entirely upon assessing the credibility of the alleged victim. Otherwise there would seem to be little point in having such a rule. We conclude that the erroneous admission of Elfreich's testimony likely had a substantial influence on the jury's guilty verdicts. Therefore, we are compelled to reverse Hamilton's convictions and to remand for a new trial.

[23] For purposes of remand, we also address Hamilton's contention that Detective Fortune improperly vouched for D.P. when, during his interview of Hamilton, he stated several times that her statements were "powerful." Ex. 7 p. 29. We acknowledge that statements made by police officers during interrogations potentially can be problematic under Evidence Rule 704(b). *See Lampkins v. State*, 778 N.E.2d 1248, 1251 (Ind. 2002). Still, we cannot say that these

comments amounted to improper vouching in the context in which they were made. In the framework of hearsay claims, statements by an officer designed to elicit a response from the defendant, as opposed to statements of fact, generally are admissible without the necessity of an admonishment or limiting instruction. *Smith v. State*, 721 N.E.2d 213, 216 (Ind. 1999). Here, similarly, Detective Fortune's saying that D.P. had made "powerful" statements were related to attempting to elicit a response from Hamilton. Hamilton did respond by agreeing that the statements were "powerful" but denied molesting D.P. or A.S. Viewing Detective Fortune's statements from the perspective of them being part of a police interview, we do not believe they carry the same vouching force as trial testimony to that effect. Hamilton also fails to cite any authority in a similar case addressing statements similar to Detective Fortune's. We conclude there was no error in the admission of those statements.

## Conclusion

[24] The trial court committed reversible error in admitting Elfreich's testimony regarding whether D.P. or A.S. had been coached. However, Detective Fortune's statements during his interview with Hamilton did not constitute improper vouching. We reverse Hamilton's convictions and remand for retrial consistent with this opinion.

[25] Reversed and remanded.

Kirsch, J., and Najam, J., concur.