Barnes, Judge,
concurring in result.
I concur in result here. I do not believe Alvarez-Madrigal adequately preserved his claim on appeal that Dr. Thompson gave impermissible vouching testimony. He objected to the testimony on the basis that it was “speculation” and “not relevant....” Tr. p. 299. A party cannot object on one basis at trial and seek reversal on appeal on a different ground. Boatner v. State, 934 N.E.2d 184, 187 (Ind. Ct. App. 2010). Thus, in order for Alvarez-Madrigal to prevail on his unpreserved claim that Dr. Thompson’s testimony was impermissible vouching, he must establish that it was fundamental error. See Absher v. State, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007). I believe Dr. Thompson’s testimony was erroneous but not fundamental error.
Despite my colleagues’ thoughtful opinion, I am convinced that a similar vouching question to the one here was addressed, explained, and held improper by our supreme court in Sampson v. State, 38 N.E.3d 985 (Ind. 2015), and this court in Hamilton v. State, 43 N.E.3d 628 (Ind. Ct. App. 2015), aff'd on r’hg, trans. denied. I am the author of Hamilton, and I stand behind it without reservation. I also understand that some cases may be distinguishable to allow some of the testimony provided here by Dr. Thompson. I also understand that crimes against children are particularly heinous. Our society as a whole—including investigators, prosecutors, and the judiciary—are understandably horrified by these crimes. I am, too.
The flip side of that coin, however, is that persons accused of such offenses face a stigma associated with no other type of crime, and they are entitled to the full protection of the law before they may be convicted. When we put in place a set of rules to govern the admission of evidence in these types of cases, we do so because of our obligation under the law to presume innocence and ensure that defendants receive a fair trial, regardless of the heinousness of the allegations. Dating back to cases such as Laman v. State, 600 N.E.2d 1334 (Ind. 1992), and Modesitt v. State, 578 N.E.2d 649 (Ind. 1991), Indiana courts have constructed a pattern of rules to address the appropriate ways to try these sorts of cases.
Most recently, in Sampson, our supreme court held that expert witnesses cannot testify as to the general signs that a child has or has not been coached and then testify as to whether a particular child exhibited any such signs, unless the defendant has opened the door to such testimony. Sampson, 38 N.E.3d at 991-92. As the court explained,
when a jury is presented with expert testimony concerning certain coaching behaviors, the invited inference that the child has or has not been coached because the child fits the behavioral profile is likely to be just as potentially misleading as expert testimony applying the coaching behaviors to the facts of the case and declaring outright that a given child has or has not been coached.
Id. at 991. The court overruled previous cases from this court in reaching this decision: Kindred v. State, 973 N.E.2d 1245 (Ind. Ct. App. 2012), trans. denied, and *897 Archer v. State, 996 N.E.2d 341 (Ind. Ct. App. 2018), trans. denied. The Sampson court did not reverse the defendant’s child molestation conviction, however, because the defendant did not object to the testimony and the error was not fundamental, in light of the victim’s testimony. Sampson, 38 N.E.3d at 992-93. The Sampson opinion relied heavily upon Hoglund v. State, 962 N.E.2d 1230, 1237 (Ind. 2012), which held that allowing testimony that a child is not prone to exaggerate or fantasize about sexual matters is “indirect vouching testimony [that] is little different than testimony that the child witness is telling the truth.”
In Hamilton, we addressed a case in which there was in fact a timely objection to the type of improper vouching testimony prohibited by Sampson. We rejected the trial court’s ruling that the defendant had opened the door to such testimony because he had asked the two alleged victims whether anyone had told them what to say in court, noting that both victims had said no and that no other evidence of alleged coaching was presented. Hamilton, 43 N.E.3d at 633. We explained that, for a defendant to open the door to otherwise inadmissible evidence, the defendant “ ‘must leave the trier of fact with a false or misleading impression of the facts related.’ ” Id. at 632-33 (quoting Beauchamp v. State, 788 N.E.2d 881, 896 (Ind. Ct. App. 2003)). “Merely asking the witnesses whether they had been told what to say is not equivalent to presenting evidence that they had been told what to say, or creating a false impression in the jury that they had been.” Id. at 633. A false impression may be created if a child recants an abuse claim during trial, or if the defendant attempts to argue or present evidence that a child is not acting like a sexual abuse victim. Id. (citing Steward v. State, 652 N.E.2d 490, 499 (Ind. 1995)). Ultimately, we reversed the defendant’s convictions, stating:
If there is to be a rule barring vouching testimony ... then it is extremely difficult to imagine a scenario in which such testimony, where an objection to it was raised at trial, is harmless in a case such as this where a conviction depends entirely upon assessing the credibility of the alleged victim. Otherwise there would seem to be little point in having such a rule.
Id. at 634. Clearly, the recent trend in the case law is to restrict both direct and indirect forms of vouching for a child witness’s credibility unless the door has been opened to such vouching. Moreover, the door must be opened by something more than simply questioning the witness and attempting to poke holes in his or her testimony, which is always the point of cross-examination.
Here, Alvarez-Madrigal cross-examined A.M. about possible inconsistencies in her testimony and conflicts with pre-trial statements. I do not believe this amounted to opening the door for vouching testimony. And, I disagree with my colleagues that Dr. Thompson’s testimony was permissible, especially with respect to her statistical statement about the number of children who purportedly make up molestation claims. That kind of testimony is, in my mind, the type of indirect vouching addressed and rejected in Hoglund, Sampson, and Hamilton. Even if Dr. Thompson’s testimony was not directly tied to A.M., what other conclusion could a jury draw from this testimony other than, “there’s a very small chance this child is making these things up”?
A number of other courts take the same dim view of statistical vouching evidence such as this. For example, in Wheat v. State, 527 A.2d 269 (Del. 1987), the Delaware Supreme Court reversed a molestation conviction after an expert witness on child abuse testified about typical be *898 haviors exhibited by an abuse victim, and also testified “that in general, between thirty percent and forty percent of children recant, alter, or otherwise minimize their original allegations of sexual abuse, but that fewer than five percent recant and maintain the altered statement.” Wheat, 527 A.2d at 271. The court flatly rejected the admissibility of this testimony. It stated, “[t]o the extent such expert testimony is given in general terms and directed to behavior factors in evidence, it is admissible. To the extent it attempts to quantify the veracity of a particular witness or provide a statistical test for truth telling in the courtroom, it is clearly unacceptable.” Id. at 275 (emphasis added). The court held that the expert had “impermissibly invaded the credibility province of the trier of fact in ‘lie detector’ fashion.” Id. See also United States v. Brooks, 64 M.J. 325, 329-30 (C.A.A.F. 2007) (reversing military convictions for indecent liberties with a child because of expert’s plainly erroneous testimony that only two to five percent of child sex abuse allegations were fabricated; convictions were reversed despite no objection to the testimony); State v. Mac-Rae, 141 N.H. 106, 677 A.2d 698, 702 (1996) (holding expert testimony that seventy to eighty percent of males treated at a certain substance abuse facility also attended by victim had been sexually abused was erroneous but was harmless because defendant had presented similar evidence); State v. Lindsey, 149 Ariz. 472, 720 P.2d 73, 75 (1986) (reversing incest convictions based on expert’s inadmissible testimony that only “a very small, proportion” of incest allegations are false and stating, “trial courts should not admit expert testimony that quantifies the probabilities of the credibility of another witness”); Aguirre v. State, 379 P.3d 1149 (Kan. Ct. App. 2016)[6] (holding defendant received ineffective assistance of counsel and vacating convictions for rape and indecent liberties with a child where trial counsel did not object to expert testimony that “very few children lie about sexual abuse” and that ninety-three percent of children who recant an abuse allegation are lying about the recantation).
In sum, I believe this court should unequivocally hold that statistical -evidence about the possibility a witness is lying invades the province of the fact finder and is inadmissible vouching. That said, I do not believe Alvarez-Madrigal adequately preserved his claim of error in this case. I also cannot say he established fundamental error, given A.M.’s detailed testimony and other evidence in the record that corroborated it. See Sampson, 38 N.E.3d at 992-93. On that basis, I vote to affirm Alvarez-Madrigal’s convictions.

. This case was not published; however, unlike in Indiana, there is not an absolute bar in the Kansas rules of appellate procedure upon citing it as precedent. See Kan. Sup. Ct. R. 7,04.